**Christina MARTINEZ, Appellant,**

v.

**The STATE of Texas.**

**No. 18502.**

Court of Criminal Appeals of Texas.

Feb. 12, 2003.

Terrence W. Kirk, Austin, for Appellant.

Edward J. Marty, Asst. Dist. Atty., Matthew Paul, State's Atty., Tyler, for the State.

## OPINION

KEASLER, J., delivered the unanimous opinion of the Court.

We are asked to decide whether Martinez's objection to two photographs de-

picting her with another individual who was exhibiting gang signs, was sufficient to preserve appellate review for all other gang related evidence. We hold that it was not.

## Facts

On July 1, 1999, Martinez, along with several of her friends and acquaintances, enjoyed a day at Lake Palestine. They spent a good portion of the day drinking, smoking marijuana, swimming, listening to music, and dancing. Sometime that afternoon, the victim, Adam Carrier, and his companion, Aaron Warren, approached Martinez's group in search of marijuana. They were told to return later in the evening, at which time the group promised to help the boys locate a source of marijuana.

Crystal Garcia, one of Martinez's friends at the lake that day and the State's key witness, testified that after Carrier and Warren left, the group devised a plan to rob the boys of their drug money upon their return. Hersain "Demon" Gomez, another member of the group, concluded that since the penalty for "robbing would be five to ninety-nine," they might as well kill the two boys. He estimated that the punishment for murder would be roughly the same as aggravated robbery and their chances of getting caught would be greatly reduced if the witnesses were dead. The final version of the plan consisted of separating the two boys, taking their money, and then killing them. When the two boys returned, some of the members of the group left with Warren in search of a source of marijuana. Martinez, Garcia, Gomez, and another member of the group remained behind with Carrier. Garcia then used a knife to puncture the tires on Carrier's car. When Carrier attempted to change the punctured tires, three of the group members beat him severely. Al-

though Martinez never physically touched Carrier, she did attempt to conceal the crime by wiping incriminating fingerprints off of his car. She also handed the murder weapon, a knife, to Gomez, who used it to stab Carrier in the heart.

## Procedural History

Martinez was charged with capital murder as a party to the offense. It was the State's responsibility to show that Martinez should have anticipated that a death would occur.[1] During a hearing on Martinez's motion in limine, the State revealed that it would introduce evidence that Martinez associated with gang members, some of whom were involved in the murder at issue, and so she should have known that their violent tendencies would result in a death. Martinez asked in this motion that the State be required to approach before offering evidence of gang affiliations. The judge overruled the motion.

During the State's direct examination of Garcia, it sought to admit the first pieces of evidence establishing that Martinez affiliated with gang members. The evidence consisted of two photographs. The photos depicted Martinez standing next to an individual with no connection to the crime. In each photo, the individual had one arm around Martinez and the other hand exhibiting a gang sign. Martinez objected as follows:

> Mr. Harrison: I show to defense counsel State's Exhibit 136 and 137.
>
> Mr. Noell: May we approach?
>
> (At the bench, on the record.)
>
> Mr. Noell: Judge, the Court will have to look at the exhibits in State's Exhibits 136 and 137. The only purpose that the State could be offering these photo-

---

1. See TEX. PEN.CODE ANN. § 7.02(b) (Vernon 1994).

graphs at this time, I would assume, is one of twofold.

That would be, one, that the State is making or has some information that in State's Exhibit 136 that the way the hand of the male in the photograph is being held, that that may be some sort of gang sign, possibly the same thing also in Exhibit 137.

As of this time, there has been no testimony before the Court about any gang-related information. Since the witness has identified Ms. Martinez on the witness—excuse me—from the witness stand as being one and the same individual seated next to me, then the only reason for the introduction of those photographs will be for the information, if any, other than my client's picture in those photographs. And at this time, we would object to the introduction of those photographs at this time.

Martinez also objected to the photos on the basis of relevance and prejudice. The judge overruled the objections and admitted the photos. Martinez asked to take Garcia on voir dire with respect to the photos. The judge denied this request.

The other evidence of gang affiliation consisted of testimony by Garcia and two additional photos. Garcia testified that Gomez, and other members of the group that participated in killing Carrier, associated with the Northside Crips. She was asked to step down from the witness stand to display her gang affiliated tattoo to the jury. The State then introduced photos of Gomez and another member of the group displaying the same tattoo. The tattoo consisted of three dots. They represented the phrase "mi vida loca" or "my crazy

life." Garcia also testified that the individual portrayed in the challenged photos was exhibiting Bloods gang signs. In order to clarify an apparent inconsistency, Garcia testified that females are free to hang out with rival gangs without problems. The only objection by Martinez to the remaining evidence of gang affiliation was one challenging Garcia's expertise on the issue of whether the Bloods and the Crips were rival gangs.

The jury convicted Martinez of capital murder for the death of Carrier. She received a mandatory life sentence.

On appeal, Martinez argued that "[t]he trial court erred in admitting evidence that appellant associated with gang members." The argument encompassed all evidence of gang affiliation, including photos and testimony to which there were no objections at trial. The appellate court addressed the merits of the argument, holding that the evidence of gang affiliation was irrelevant, and, even if it could be construed as relevant, it was prejudicial.[2] In a footnote the court noted that Martinez objected generally "that the gang-related information was irrelevant and prejudicial ... [and thus] preserved error and was not required to iterate this objection."[3] The court cited Texas Rules of Evidence 103(a)(1) for this proposition.[4]

We granted the State's petition to decide whether the court of appeals erred by ruling that an objection to the two photographs preserved appellate review for all testimony and all other photos related to gang activity. We find that the court of appeals erred in several respects.

---

**2.** *Martinez v. State,* No. 12–00–00246–CR, —— S.W.3d ——, 2001 WL 1654493, 2001 Tex. App. LEXIS 8538 (Tex.App.-Tyler Dec.21, 2001).

**3.** *Id.* at 4 n. 5, —— S.W.3d at ——, 2001 WL 1654493, *6.

**4.** *Id.*

*Analysis*

 First, the objections to the challenged photos did not preserve error for all other gang related evidence. Under Texas law, "if, on appeal, a defendant claims the trial judge erred in admitting evidence offered by the State, this error must have been preserved by a proper objection and a ruling on that objection."[5] A proper objection is one that is specific and timely.[6] "Further, with two exceptions, the law in Texas requires a party to continue to object each time inadmissible evidence is offered."[7] The two exceptions require counsel to either (1) obtain a running objection, or (2) request a hearing outside the presence of the jury.[8] In this instance, Martinez did not continue to object to all of the gang related evidence, did not obtain a running objection, and did not request a hearing outside the presence of the jury. Instead, she objected specifically to the two photos.

Martinez's objection to the introduction of the photos is similar to the objection raised by defense counsel in *Ethington.* In that case, counsel objected initially that the State was eliciting testimony of an extraneous offense. We held that one objection was insufficient to preserve error for the following "three pages of questions and answers on the subject...."[9] Counsel should have either continued to object, requested a running objection, or requested a hearing outside the presence of the jury.

 Second, the court of appeals incorrectly stated that Martinez objected generally to the gang related evidence. The only general objection to this type of evidence was in the motion in limine. But a motion in limine does not preserve error.[10] So the court erred in holding that Martinez preserved error for all gang related evidence.

 Third, the court of appeals erred in relying on Rule 103(a)(1). That rule excuses the requirement to repeat objections in front of the jury if a proper objection has been made outside the jury's hearing. Martinez objected to the two photos at a bench conference. So under Rule 103(a)(1), it was not necessary to repeat the objections to the photos once they were admitted in front of the jury. But the court of appeals cited Rule 103(a)(1) for the proposition that Martinez was not obligated to object to all other gang related evidence. The court's reliance on Rule 103(a)(1) for this proposition is erroneous.

So while Martinez preserved error as to the two photos, she did not preserve error as to all other evidence of gang affiliation. Therefore, the judgment of the court of appeals reversing the trial court's ruling on all gang related evidence is itself reversed. Since the appellate court reviewed only Martinez's first point of error, we remand this case to that court for consideration of Martinez's remaining points of error.

5. *Ethington v. State,* 819 S.W.2d 854, 858 (Tex.Crim.App.1991).

6. *Wilson v. State,* 71 S.W.3d 346, 349–50 (Tex. Crim.App.2002).

7. *Ethington,* 819 S.W.2d at 858.

8. *Id.*

9. *Id.* at 859.

10. *Wilkerson v. State,* 881 S.W.2d 321, 326 (Tex.Crim.App.1994).