# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00687-CR

**Katrell Omar Childs, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 277TH JUDICIAL DISTRICT NO. 01-834-K277, HONORABLE MICHAEL JERGINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Katrell Omar Childs appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Pen. Code Ann. § 22.02 (West 2003). On appeal, Childs argues that (1) the evidence presented at trial was factually insufficient to support his conviction, and (2) the district court erred in admitting evidence of his unadjudicated juvenile offense during the guilt-innocence stage of the trial. We will affirm the judgment of conviction.

## BACKGROUND

On the evening of April 17, 2001, the complainant in this case parked next to the community mailboxes in her subdivision. She got out of her vehicle and left the engine running. As she approached the mailboxes, she noticed a man standing next to a nearby fence. When she reached inside her box to get her mail, she was struck on the back of the head with a landscaping

rock, allegedly by the man whom she had noticed. The assailant then entered the complainant's vehicle and drove off.

A neighbor assisted the complainant and called the police and emergency personnel. Before being taken to the hospital, the complainant described her assailant to the responding officer, Officer Looney, as a young black male who was about six-feet tall. She stated that he was wearing glasses, a red T-shirt, and dark pants or shorts.

Shortly after Officer Looney had finished interviewing the complainant, she received a call from the dispatch officer regarding a runaway. The dispatch officer connected Officer Looney with the runaway's mother, who alerted Officer Looney that her sixteen-year-old son, Childs, had left home following an argument with his stepfather. Childs's home was located in a subdivision adjacent to that in which the recent assault had occurred. Based upon the timing of the call and the description provided by Childs's mother, Officer Looney considered Childs a suspect in the assault because he fit the description given by the complainant, he lived in a nearby subdivision, and he left home just before the assault occurred. She patrolled Childs's neighborhood intermittently throughout the rest of her shift, searching for both Childs and the complainant's vehicle. In the early morning hours of April 18, 2001, Officer Looney recovered the complainant's gold-colored 2000 Nissan Pathfinder a few blocks from Childs's residence.

Crime-scene specialists found Childs's ring in the complainant's vehicle and his fingerprint on the driver's-side door. The crime-scene specialists noticed blood on the ring and, following a DNA analysis, concluded that the blood was Childs's. The complainant also positively

2

identified Childs from a photographic line-up. Following his arrest, he was tried before a jury, which convicted him of aggravated assault with a deadly weapon and sentenced him to life imprisonment.

Childs now argues that (1) the evidence presented at trial was factually insufficient to support his conviction, and (2) the district court erred in admitting evidence of an unadjudicated juvenile offense during the guilt-innocence phase of his trial.

## DISCUSSION

### Factual Sufficiency

When a defendant challenges the factual sufficiency of a finding of guilt, we must apply a two-pronged test. *Zuliani v. State*, 97 S.W.3d 589, 594 (Tex. Crim. App. 2003) (citing *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). First, we ask whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination. *Id*. Second, we ask whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id*.

Regarding the first prong, the complainant was employed as a bank manager and security officer. Part of her job was to train other bank employees to be observant during robberies so that they could later describe the perpetrators to police. On the day that she was assaulted, the complainant gave police a description of her attacker, and Childs fit that description. Three days later the complainant went to the police station and picked Childs out of a photographic line-up of six young African-American males wearing glasses. When the complainant testified at Childs's trial, she again identified him as the man who assaulted her.

3

A crime-scene specialist testified at trial that she had recovered Childs's fingerprint from the driver's-side door of the complainant's vehicle and had found one of his rings between the driver's seat and the center console. Childs admitted during his own cross-examination that he was wearing that ring when he left his house on April 17, 2001. A Department of Public Safety lab technician extracted blood from the inside of the ring, analyzed the blood, and discovered that it contained Childs's DNA. Because of the high probative value of the eye-witness testimony and physical evidence, a neutral review of all the evidence does *not* demonstrate that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination.

The second prong of the *Zuliani* test is whether the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. 97 S.W.3d at 594. On the night of the attack, the complainant described her assailant to police as a young black male between the ages of seventeen and twenty. She described him as between 5'10" and 6'0" tall. She said that he was wearing gold wire-rim glasses, a red T-shirt, and dark pants or shorts.

Childs fits this description generally, but there are some discrepancies. He was sixteen on April 17, 2001. He is 6'2" tall and weighs 160 pounds. He owned silver wire-rim glasses but testified that he was wearing contacts on the day of the assault, an assertion supported by the testimony of his stepfather, his sister, and his mother. Childs and his family also agreed that he was wearing a white T-shirt and blue denim shorts. In fact, his stepfather testified that he forbade Childs to wear red in the house because it was the color of a gang with which Childs had been affiliated. Childs insists that he could not have changed clothes after he left the house. He tried to leave with bags of clothing, but his stepfather forced him to leave without them.

4

Childs further testified that on April 17, 2001, he saw an acquaintance named A.C. Beal driving a gold-colored 2000 Nissan Pathfinder. He stated that Beal admitted to stealing the vehicle. Childs surmised that, while sitting in the Pathfinder speaking with Beal, his ring slipped off of his finger. He explained that after he exited the Pathfinder, he walked over to the driver's side of the vehicle to say a few parting words to Beal and touched the door, leaving his fingerprint.

The defense evidence does contradict the State's evidence on several points. On rebuttal, however, the State showed that A.C. Beal was on probation on April 17, 2001. As part of that probation, he was forced to wear an electronic-monitor at all times. The State produced electronic monitor records from the Williamson County Probation Department, which showed that on April 17, 2001, Beal was at his residence in Dallas, Texas. This evidence contradicted Childs's testimony, and the jury was free to weigh this competing evidence accordingly. *See Goodman v. State*, 66 S.W.3d 283, 295 (Tex. Crim. App. 2001) (noting that juries can decide how much weight to give to various pieces of evidence in trial). Because the jury could have reasonably believed the State's evidence and disbelieved Childs's evidence, especially in light of the State's rebuttal evidence, Childs's evidence does not greatly outweigh the proof of guilt. Because he does not meet either standard for factual insufficiency under *Zuliani*, we overrule his first issue.

**Extraneous Offense**

Childs's second issue is that the district court erred in admitting evidence of an unadjudicated juvenile offense during the guilt-innocence stage of his trial. During the State's cross-examination of Childs's stepfather, the court held a hearing outside of the presence of the jury to determine the admissibility of evidence that Childs had taken his stepfather's rental car in March

5

2000. The district court ruled that this evidence was admissible to prove motive under 404(b) and that the evidence's probative value was greater than its prejudicial effect.[1] *See* Tex. R. Evid. 404(b). In the presence of the jury, Childs's stepfather then testified that in March 2000, Childs took his car without permission. Childs now argues that the district court's decision to admit this testimony was erroneous.

Before considering the propriety of the district court's evidentiary ruling, we must determine whether this issue was properly preserved for appeal. In order to preserve an error for appeal, a party must make timely and specific objections at trial. *See* Tex. R. Evid. 103(a)(1); Tex. R. App. P. 33.1. In addition, a party must object each time the inadmissible evidence is offered. *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003). An error in the admission of evidence is cured when the same evidence is admitted elsewhere without objection. *Id.* at 509-10. There are two exceptions to this "contemporaneous objection" rule. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A party can (1) obtain a running objection or (2) request a hearing outside of the presence of a jury. *Id.* Childs failed to meet either exception.

Although he did object the first time that the State elicited testimony that he took his stepfather's car, Childs did not ask for a running objection. He made an objection in a hearing outside of the presence of the jury, but this exception only relieved Childs from having to repeat his objection when the jury returned to hear his stepfather's testimony. *See Ethington v. State*, 819

___

[1] Childs was on probation on April 17, 2001. Sometime before the day of the assault, he had learned that there was a risk that his probation would be revoked. The State argued that the threat of having his probation revoked motivated Childs to steal the complainant's car and flee the area.

S.W.2d 854, 859 (Tex. Crim. App. 1991). In order to properly preserve the error for appeal, Childs still had to object when subsequent witnesses were asked about the same subject. *See id.*

After his stepfather testified, Childs testified in his own defense. On cross-examination, Childs admitted to taking his stepfather's car. This testimony was admitted without objection. Because Childs failed to object during his own cross-examination to the admission of evidence regarding his previous offense, any error in admitting the objected-to testimony during his stepfather's cross-examination was waived. *See Valle*, 109 S.W.3d at 509-10. We overrule Childs's second issue.

## CONCLUSION

Because the evidence supporting Childs's conviction for aggravated assault with a deadly weapon is factually sufficient, and because Childs failed to preserve the adverse ruling regarding his previous offense, we affirm the judgment of conviction.

_____

Mack Kidd, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: November 20, 2003

Do Not Publish

7