# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00472-CR

**James Quisenberry, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 922635, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

James Quisenberry appeals an order revoking his community supervision. In 1993, Quisenberry pleaded guilty to the offense of indecency with a child by contact and was sentenced to ten years' imprisonment. *See* Tex. Pen. Code Ann. § 21.11(a)(1) (West 2003). Imposition of sentence was suspended, and Quisenberry was placed on community supervision for a term of ten years. After Quisenberry completed nine years of his probation, the State filed a motion to revoke his community supervision alleging that Quisenberry had failed to report on one occasion in 1998, that he was delinquent in payment of his fees by $80, and that he had been terminated from his sex offender therapy program. After a hearing, the trial court found that Quisenberry had violated his community supervision and sentenced Quisenberry to six years' imprisonment.

In his first two points of error Quisenberry contends that the trial court improperly admitted hearsay evidence of his failure to report and his delinquency in payment. Quisenberry asserts in his third point of error that a condition of his community supervision requiring successful completion of therapy, as determined by the therapist, was unconstitutionally vague. In his fourth point of error, he contends that the trial court abused its discretion by considering statements he made to his therapist obtained in violation of his Fifth Amendment protection from self incrimination. Because the trial court did not abuse its discretion in finding that Quisenberry violated the conditions of his community supervision, we affirm the trial court's order revoking community supervision and imposing sentence.

## BACKGROUND

The thirty-two conditions of Quisenberry's community supervision included requirements that he regularly report to his community supervision officer, pay a monthly probation supervision fee and:

> Enroll, actively participate in and cooperate fully in Sex Offender therapy as designated by Probation Officer and while in such program, submit to psychological or psychiatric testing, evaluation as well as individual, family or group counseling as directed by said therapist/Probation Officer and remain in such program until successfully completed, as determined by the therapist, and attend all sessions and complete all homework assignments.

After Quisenberry completed four years of community supervision, the State moved to revoke his community supervision alleging that he was delinquent in payment of his fees by $52 and that he failed to actively participate in and cooperate fully in his sex offender therapy. After a hearing, the

2

trial court continued Quisenberry's community supervision through an order dated December 30, 1997.

Quisenberry continued on community supervision until August 2002 when he was arrested in connection with a second motion to revoke his community supervision. This motion alleged that Quisenberry failed to report to his community supervision officer as scheduled on August 18, 1998, was delinquent in payment of his community supervision fee by $80, and had been terminated from sex offender therapy on July 28, 2002.

A hearing on the State's motion was conducted in October 2002. The State called Quisenberry's community supervision officer, Gloria Lira, to testify about Quisenberry's failure to report and pay fees. Lira testified that her records indicated that Quisenberry was delinquent in payment of his community supervision fees by $160. Lira confirmed that Quisenberry had regularly reported to her in compliance with the conditions of his supervision. Then, based on her review of Quisenberry's file, Lira testified that Quisenberry had missed a scheduled appointment with his prior community supervision officer on August 18, 1998. Lira also testified that she received a letter from Quisenberry's therapist indicating that Quisenberry had been terminated from the sex offender treatment program.

The State also called Vivian Lewis-Heine, Quisenberry's sex offender therapist. Lewis-Heine treated and supervised Quisenberry's treatment from the time he began therapy in 1993. She explained that she first terminated Quisenberry's treatment in 1997 for refusal to participate in the treatment program. She cited major violations such as the use of pornography, use of marijuana, suspicion of use of alcohol and other substances, and contact with children in violation of a no

3

contact order. Lewis-Heine testified that she continued treating Quisenberry after 1997 and discussed the factors that led her to again terminate treatment in 2002. She explained that Quisenberry had slowly progressed in his therapy until about 1999 when he "began to nosedive slowly." She referred him for psychiatric care in 2000 when he began having attachment issues with his biological mother and his own children. She stated that he took a series of polygraph examinations in 2001, which he did not pass. In a December 2001 therapy session, Quisenberry reported that he had sexual arousal when his twelve-year-old son Jacob placed his thumb in Quisenberry's mouth. Quisenberry also reported that he had looked in an ashtray for marijuana roaches and that he tasted a bag of powder he found at work hoping it was cocaine. Lewis-Heine described an incident in which Quisenberry reported that he was attracted to a co-worker's teenage daughter and that he felt that driving his co-worker home was an opportunity to find out where the daughter lived.

Lewis-Heine explained why Quisenberry's behavior indicated that he should be terminated from therapy:

> So it came to my attention in June or July of 2002 that these were situations that were really beyond the normal reporting in a treatment session. In the first three years of treatment we expect this type of reporting, but in the ninth year that means something is not clicking and I believe that we need to defer to the Court to make a decision about the safety of the community regarding these . . . thoughts, feelings and behaviors that are being reported to us.

Lewis-Heine also voiced concern that Quisenberry was a threat to the minor children of the woman he was dating.

4

At the hearing, Quisenberry cross-examined the State's witnesses and called the owner of the gas station where he worked, his father, his ex-wife, and his girlfriend as witnesses. Quisenberry's witnesses demonstrated that Quisenberry was a dependable worker and a devoted father. They established that Quisenberry made extensive efforts over nine years to comply with the rigorous conditions of his community supervision. At the conclusion of the hearing, the trial court granted the State's motion to revoke community supervision and imposed a sentence of six years' imprisonment.

## DISCUSSION

In his first two points of error, Quisenberry contends that the evidence was insufficient to support revocation of his community supervision because the evidence showing that he failed to report to his community supervision officer and was delinquent in payment of fees was improperly admitted. In conducting a factual or legal sufficiency review, however, we consider all of the evidence, rightly or wrongly admitted. *Camarillo v. State*, 82 S.W.3d 529, 537 (Tex. App.—Austin 2002, no pet.). We will therefore construe Quisenberry's first two issues as a challenge to the improper admission of hearsay evidence.

The root of Quisenberry's contention is that Lira, his current community supervision officer, did not have personal knowledge of his failure to report and of his delinquency in payment of fees before her service. Lira testified only from business records that were not introduced into evidence. Quisenberry contends that Lira's testimony about the contents of the records was inadmissible hearsay and could not be used as evidence of his failure to meet the conditions of his community supervision. We need not pass on this question, however, because Quisenberry has not

5

preserved error. Lira testified without objection that, as of October 14, 2002, Quisenberry was delinquent in payment of his community supervision fees by $160. When Lira was asked whether Quisenberry was current on his reporting to his prior community supervision officer, Quisenberry objected raising hearsay grounds. This objection was sustained. The State then established that Lira was the custodian of Quisenberry's community supervision records and again asked about Quisenberry's reporting history. Quisenberry objected and questioned Lira on voir dire. He established that Lira was testifying from records that were ordinarily kept in her office file cabinet and that Quisenberry's files had been stored there since she took over from the prior community supervision officer. After the voir dire examination, Quisenberry announced that he had no further questions and did not obtain a ruling on his objection. Lira then testified that Quisenberry missed an appointment on August 18, 1998. In cross examining Lira, Quisenberry himself elicited testimony about both the missed appointment and Quisenberry's delinquency in payment.

In order to preserve error in the admission of evidence, a defendant must make a specific and timely objection and obtain a ruling from the trial court. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). A defendant must object each time inadmissible evidence is offered unless he requests a hearing or has obtained a running objection. *Id*. Here, Quisenberry did not object at all to the evidence that he was delinquent in payment of fees. Furthermore, Quisenberry did not obtain a ruling on his objection to Lira's testimony based on the records in her possession. In fact, Quisenberry elicited much of the same testimony on cross examination that he now complains of on appeal. Because Quisenberry has failed to preserve error, we overrule his first and second points of error.

In his remaining points of error, Quisenberry challenges the constitutionality of the condition of his community supervision that he enroll, actively participate in, and cooperate fully in sex offender therapy and challenges the use of statements he made in therapy against him. Because Quisenberry did not object to the evidence of his failure to report and his delinquency in payment of fees, however, these were proper grounds for revocation of community supervision. We need not address Quisenberry's other contentions since a single violation of community supervision will support the court's revocation order. *Sanchez v. State*, 603 S.W.2d 869, 871 (Tex. Crim. App. 1980) (single probation violation will support revocation of probation).

## CONCLUSION

Because we overrule Quisenberry's first two points of error, we have addressed all issues raised that are necessary to the final disposition of his appeal. We affirm the trial court's order revoking his community supervision.

Bea Ann Smith, Justice

Before Justices Kidd, B. A. Smith and Pemberton

Affirmed

Filed: September 30, 2004

Do Not Publish

7