Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



★  ★  ★                    ★  ★  ★

# MEMORANDUM OPINION

No. 04-08-00783-CR

Michael Weston **FULLER**,
Appellant

v.

**STATE** of Texas,
Appellee

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 4655
Honorable Stephen B. Ables, Judge Presiding

Opinion by:   Steven C. Hilbig, Justice

Sitting:       Phylis J. Speedlin, Justice
               Rebecca Simmons, Justice
               Steven C. Hilbig, Justice

Delivered and Filed: February 10, 2010

AFFIRMED

Michael Weston Fuller was found guilty by a jury of aggravated sexual assault of his daughter S.F. The trial court imposed the sixty-year sentence recommended by the jury. On appeal, Fuller contends the evidence is factually insufficient to support the jury's verdict and the trial court erred in admitting a psychologist's testimony because it constituted bolstering. We affirm the judgment of the trial court.

**BACKGROUND**

Fuller was charged with committing aggravated sexual assault of his daughter S.F. by causing his sexual organ to penetrate her sexual organ. The charge grew out of an investigation that was prompted by S.F's outcry of abuse to her grandmother. The outcry occurred after Fuller and his wife Jessica, S.F.'s mother, separated and Jessica had moved to Utah. Based on the outcry, S.F., who was eight years old, and one of her brothers, J.F., who was six years old, were interviewed by child protective services in Utah. The interviews were video recorded and Fuller introduced the interview of S.F. into evidence. The State subsequently placed a transcript of the interview into evidence as well.

During the interview, S.F. stated she and her brothers were "sexually abused" by Fuller, but admitted she did not know what "abused" meant. She claimed Fuller hit her and her siblings "as hard as he could" "every single night and every morning." According to S.F., Fuller would come into her room and have each of the children undress and then he would insert his penis into their "butts." S.F. told the interviewer the abuse "happened every day of the week." S.F. described another incident with Fuller, saying she saw "this white thing that comes and we (siblings) don't know exactly what it is." S.F. told the interviewer there was an episode of abuse when she and her siblings were duct-taped to the floor and Fuller inserted his penis in their anuses. She also claimed Fuller would insert his finger in her vagina. Although S.F. said she saw Fuller's penis, she stated she never touched it. According to S.F., Fuller threatened to beat the children with a knife in front of their mother if they ever told anyone about the abuse.

At one point during the interview, while describing an incident of abuse, S.F. recalled thinking, "in the back of my mind I'm, like, please, Lord, help me. I don't want to go through this",

and that God said to her "go through this and then next step go through all this paperwork and get him in jail and then have a new life." S.F. explained that she did not like talking about the incidents, but she knew it was important. S.F. stated "because the more you (the interviewer) write down, the more he's going to be in jail. That's what my mom said." S.F. told the interviewer no one had told her what to say. S.F. also claimed that her step-brother M.F. was present during the abuse. However, S.F.'s mother testified that M.F. had been removed from the home and he could not have been present when the abuse occurred.

Dr. Kenneth Hopps, a licensed psychologist with twenty-four years of experience in the field of sexual abuse, testified on behalf of the State. Dr. Hopps told the jury he had treated more than 450 victims of sexual abuse and that children respond to abuse in a variety of ways. Dr. Hopps explained that if abuse starts at an early age, the child has difficulty understanding what has happened to them and will describe the abuse in ways that do not seem realistic to an adult. He also explained that if the abuse occurs frequently, the child may confuse or mix the details of the various incidents. When questioned about S.F.'s claim that the abuse occurred "millions" of times, Dr. Hopps agreed this seemed exaggerated. Dr. Hopps testified "these abuse situations are so exaggerated in reality, that the child's response to them may tend to be exaggerated, as well." Dr. Hopps found it highly significant that S.F. mentioned seeing the white substance coming out of Fuller's penis because he was not sure "that kind of information" would be "going around in circles of girls her age."

Dr. Hopps described S.F.'s recitation of the abuse to be "matter of fact." He explained this is not the typical way abuse is described; however, it is one way some children present the abuse and cope with what happened. Dr. Hopps also explained that one of the ways to substantiate or disprove

an outcry of abuse is the consistency of the story over time. He found that the key elements of S.F.'s story were consistent over an eighteen month period of time.

During cross-examination, Dr. Hopps acknowledged that a physical exam of S.F. did not reveal any evidence of sexual abuse, but told the jury that such is the result in ninety-eight percent of victims. Dr. Hopps agreed that children want to please authority figures and are "highly suggestible." However, Dr. Hopps testified he seldomly sees "coaching" in very young children and opined that it did not appear S.F.'s mother and grandmother were telling her what to say. Fuller introduced a letter Dr. Hopps wrote in which the doctor said, "the members of this family have experienced some of the most severe domestic violence, sexual and physical abuse I have dealt with as a therapist in the past 20 years or so."

S.F. testified at trial that Fuller touched her "a lot" where her underwear is located. S.F. testified about one occasion involving an incident in the bathroom that was not reported during the forensic interview in Utah. S.F. testified Fuller woke her and told her to take off her clothes. She testified Fuller then took her into the bathroom, showed her some human excrement in the toilet, and told her to eat it. She refused. Fuller next woke up her younger brothers J.F. and J.D.F.[1] S.F. stated Fuller told the boys to use their penises to penetrate her vagina and anus. S.F. testified that both boys did so and then Fuller inserted his penis into her vagina and anus.

Jessica[2] was married to Fuller at the time the abuse occurred. She testified her marriage began to fall apart because she was concerned about Fuller's drinking, involvement with

---

[1] The brothers would have been approximately five and one-half and two and one-half years old respectively at the time of this incident.

[2] Jessica testified she can only hear very loud noises, and testified through an interpreter. She also testified she has hearing aids, but did not possess any hearing aids while married to Fuller.

pornography, and a relationship with a sixteen year-old girl. She testified Fuller physically and sexually assaulted her on March 19, 2006, which prompted her move to Utah where she sought a protective order and instituted divorce proceedings. Jessica told the jury S.F. made an outcry about the sexual abuse around Thanksgiving Day of 2006.

### FACTUAL INSUFFICIENCY

Fuller claims the evidence is factually insufficient to support the jury's verdict.[3] Fuller argues S.F.'s testimony is incredible because of inconsistencies in her trial testimony and her recorded interview. Fuller contends that when viewing the evidence in a neutral light and taking into consideration the evidence that undermines the verdict, the verdict is clearly wrong and manifestly unjust.

In reviewing the factual sufficiency of the evidence, we look at the evidence in a neutral light, and ask whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). We may not reverse a case because we disagree with the jury's resolution of a conflict in the evidence. *Watson v. State*, 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). We must defer to the jury's determination of the weight to be given to contradictory testimonial evidence because resolution of the conflict is often determined by an evaluation of credibility and demeanor by the jurors who witnessed the testimony. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We "must be cognizant of the fact that a jury has already passed on the facts and must give due deference to the determinations of the jury in order to avoid substituting

---

[3] Fuller prays this court enter a judgment of acquittal due to factual insufficiency; however, the appropriate remedy for factual insufficiency is to reverse the judgment and remand the case to the trial court for a new trial. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

our judgment for that of the jury." *Lancon v. State*, 253 S.W.3d 699, 704 -705 (Tex. Crim. App. 2008). "Appellate courts should afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility." *Id*. at 705. To reverse we would have to find that the great weight and preponderance of the evidence contradicts the jury's verdict. *Watson*, 204 S.W.3d at 417.

To undermine the jury's verdict, Fuller argues that S.F.'s claims are bizarre and inconsistent. He contends her testimony is not credible because she testified the abuse happened every day. Fuller takes issue with S.F.'s testimony that her step-brother was present during some of the abuse because that is contrary to other witnesses's testimony that he could not have been present.[4] In attacking the jury verdict he also argues the lack of physical evidence of abuse is inconsistent with S.F.'s claim she was abused daily. Fuller also contends S.F.'s demeanor on the videotape is not consistent with someone who has been sexually abused.

In essence, Fuller argues we should find S.F.'s testimony to be incredible and not worthy of belief. Although there are inconsistencies in S.F's allegations of abuse, we are obligated to defer to the jury's determination of her credibility. S.F. was subjected to cross-examination and she admitted she made some errors in her interview, and that she did not include some of the details she testified about at trial in her earlier interview. The jury heard the evidence and we give due deference to its determinations. *See Lancon v. State*, 253 S.W.3d at 704 -705. The jury, and not this court, was in the best position to determine whether the substance of S.F.'s testimony – Fuller sexually assaulted her – was worthy of belief and whether the State met its burden of proof. We hold the verdict is not

---

[4] Fuller also argues S.F.'s testimony should be discredited because the DVD containing the interview of S.F. also contains the interview of her younger brother J.F. in which J.F. contradicts some of S.F.'s statements. However, the only part of the DVD admitted into evidence was the interview of S.F..

clearly wrong or manifestly unjust, and the evidence is factually sufficient to support the jury's verdict.

### EVIDENTIARY RULINGS

Fuller argues the trial court committed reversible error in admitting Dr. Hopps's testimony. Fuller argues Dr. Hopps's testimony "crosses the line" because it was to "shore up" S.F.'s "inconsistent and bizarre" statements about what happened to her.

When Dr. Hopps was called to testify, Fuller initially objected, arguing the testimony would not be relevant and was to bolster S.F.'s character. The State responded that it was offering the witness to testify about victims's reactions to abuse and explain the complainant's ability to relate an account of her abuse. The court ruled it would permit the witness to testify, but told the parties: "I am going to have to just listen to the question and I will give you a chance to object . . . ." In his brief, Fuller identifies seven examples of Dr. Hopps's testimony that he claims amounted to bolstering. However, he failed to object in four of the instances, made a general objection another time, objected once based on speculation, and once that the witness was referring to testimony about the complainant's siblings and should limit his opinion to the complainant.

To preserve error for appellate review, an appellant must make a timely, specific objection and obtain an adverse ruling. TEX. R. APP. P. 33.1(a); *Young v. State*, 137 S.W.3d 65, 69 (Tex. Crim. App. 2004). "A party's objection must inform the trial court why or on what basis the otherwise admissible evidence should be excluded." *Cohn v. State*, 849 S.W.2d 817, 821 (Tex. Crim. App. 1993)(Campbell, J., concurring). Additionally, an appellant's complaint on appeal must comport with the objection made at trial; otherwise, the appellant has preserved nothing for review. *Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003).

Although Fuller initially objected to Dr. Hopps's proposed testimony as bolstering, he never obtained an adverse ruling from the court on that objection. Rather, the trial court told counsel the objections should be made as the witness testified. Fuller did not make any objection predicated on bolstering during Dr. Hopps's testimony. Accordingly, Fuller waived his bolstering complaint and failed to preserve it for appeal. *See* TEX. R. APP. P. 33.1(a)(1)(A); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *Resendiz v. State*, 112 S.W.3d 541, 547 (Tex. Crim. App. 2003).

## CONCLUSION

The judgment of the trial court is affirmed.

Steven C. Hilbig, Justice

DO NOT PUBLISH