In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00117-CR**
**NO. 09-18-00118-CR**
_____

**TIMOTHY ALAN LATNER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

_____

**On Appeal from the 359th District Court**
**Montgomery County, Texas**
**Trial Cause Nos. 15-12-12824-CR and 15-07-07313-CR**
_____

**MEMORANDUM OPINION**

In four appellate issues, Timothy Alan Latner seeks to overturn his

convictions, which are based on two indictments, alleging that in April 2012, he

sexually assaulted a child, *Pam*.[1] In his first three issues, Latner contends the jury's

---

[1] To protect the victim's privacy, we identify her by using a pseudonym. *See*
Tex. Const. art. I, § 30 (granting crime victims "the right to be treated with fairness

1

verdict should be reversed because the trial court erred by allowing the jury to consider certain evidence that he argues the trial court should not have admitted into evidence during his trial. In his fourth issue, Latner argues he received ineffective assistance of counsel in his trial because his attorney did not object to the manner the trial court responded to two notes the jury sent to the court while the jury was deliberating on its verdict. For the reasons explained below, we affirm.

## Background

In December 2015, in Trial Court Cause Numbers 15-12-12824-CR and 15-07-07313-CR, a Montgomery County Grand Jury indicted Latner for two sexual assaults, alleging he sexually assaulted Pam on or before April 29, 2012.[2] The guilt-innocence phase of the trial began in November 2017. Seven witnesses testified in the first phase of the trial, including Pam, her mother, a forensic nurse, and two employees of Children's Safe Harbor[3] who interviewed Pam about the alleged sexual assaults.

---

and with respect for the victim's dignity and privacy throughout the criminal justice process[.]"

[2] Tex. Penal Code. Ann. § 22.021(a)(1)(B).

[3] Children's Safe Harbor is a child advocacy center that allows children to state what happened to them while their stories are recorded. *In re G.B.*, No. 09-15-00285-CV, 2016 Tex. App. LEXIS 414, at *23 n.2 (Tex. App.—Beaumont 2016, no pet.) (mem. op.).

2

When viewed in the light that most favors the jury's verdict,[4] the evidence shows that in 2012, Pam, her mother ("Paula"), and Latner were living in Latner's home. According to Pam, she was around nine-years old when Latner began showing her pornographic movies and asking her to use sex toys on herself while he was present. Pam's mother testified that, on October 6, 2014, Pam showed her an electronic device containing messages containing information that caused her to become "very upset." When Latner came home that night, Pam's mother confronted him about the content of the messages on Pam's phone, which alleged Latner sexually assaulted Pam. Latner denied the messages were true. Then, Pam's mother showed Latner the messages on Pam's phone.

On October 15, 2014, Paula took Pam to Children's Safe Harbor, where she was interviewed by Mayra Domingue. Domingue testified about her training and experience in conducting forensic interviews. According to Domingue, Pam accused Latner of sexually assaulting her while she was living in his home. Pam related the conduct occurred when she was around nine-years old. One of the incidents involved Latner's sexual organ penetrating Pam's mouth. In another, Pam related that Latner penetrated her sexual organ with his.

---

[4] *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

In November 2017, the State tried Latner on the two indictments, which were consolidated for the purpose of trial. The indictment in Trial Court Cause Number 15-07-07313-CR alleged that Latner, on or about April 29, 2012, and before he was indicted, knowingly or intentionally penetrated Pam's mouth with his sexual organ. The indictment in the other case, Trial Court Cause Number 15-12-12824-CR, alleged that Latner, on or about April 29, 2012, and before he was indicted, knowingly or intentionally caused Pam's sexual organ to contact his.

Pam, who was fourteen years old when the case was tried, described how Latner sexually abused her when she and her mother lived in Latner's home. One of the incidents she described occurred when Pam was around nine-years old. Latner had Pam lie down on his bed while he attempted to penetrate her sexual organ with his. Pam described other incidents, which also occurred when she was about nine, when Latner told her to put his sexual organ in her mouth and she complied.

At the conclusion of the guilt-innocence phase of the trial, the jury found Latner guilty on both counts of sexual assault. Following a sentencing hearing, which occurred around two weeks later, the trial court assessed concurrent life sentences.

Latner's first three issues allege the trial court erred by admitting certain testimony that he argues was inadmissible as hearsay. In his fourth issue, Latner

argues he received ineffective assistance of counsel during the guilt-innocence phase of his case when his attorney failed to object to the response the trial court gave the jury when the jury sent notes requesting the court to allow the jury to review certain of the testimony from his trial.

Extraneous Sexual Acts

In his first issue, Latner argues the trial court erred by allowing Paula to "discuss the details of her sexual activities with [Latner], which included oral sex, use of sex toys, and pornography." In response to Latner's argument, the State argues that Latner lodged an objection just once to the first general question the prosecutor asked Pam's mother about the couple's sex life,[5] but that Latner failed to obtain a running objection to the series of follow-up questions the prosecutor then asked. In these, Paula revealed that she and Latner, when they were living together, engaged in oral sex, used sex toys, and watched pornographic movies together. The State concludes that by failing to object to each follow-up question that inquired about the

---

[5] The prosecutor's question: "What was your sexual relationship like with [Latner]?" Latner's attorney objected to the question, asserting it was not relevant. The trial court overruled the objection, and Pam's mother responded: "I don't know how to answer that question."

couple's sex life or to secure a running objection[6] to follow-up questions, Latner failed to preserve the error he complains about in his first issue.

A trial court may grant a party's request and the court may choose to grant a running objection to a question posed in the trial to further answers on the topic addressed by the initial question. Or instead, the court may require the party to comply with the general rules of error preservation which requires an objection to each of the questions on a topic that the party has complained of in the appeal.[7]

Here, the record shows Latner failed to object to the series of questions Paula answered that resulted in her testimony that she and Latner, while together, engaged in intercourse, oral sex, watched pornography, and used sex toys. So while Latner preserved the relevance objection he lodged to the prosecutor's general question asking what Paula's and Latner's sexual relationship was like, he did not preserve

---

[6] *See Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003) (noting the error admitting evidence was waived where the defendant failed to either continue to object, request and obtain a ruling on a running objection, or request a hearing outside the presence of the jury on the admissibility of the evidence admitted in the trial); *see generally* Tex. R. App. P. 33.1 (preservation of complaints for an appeal).

[7] *Id.*

anything for appeal on the follow-up questions the prosecutor asked about their sexual relationship.[8]

Turning to the only question that Latner's objection covered, we note that Paula's answer—she did not know how to answer—is not the answer that Latner argues harmed him in his trial. Instead, he points to Paula's testimony about the details of the couple's sex life, answers based on the follow-up questions asked without any objections being lodged. And by failing to object to testimony about the couple's sex life each time the subject came up, Latner forfeited his right to appellate review of his claim the testimony on that subject was not relevant in his trial.[9]

Finally, even if the general question the prosecutor asked Paula about the couple's sex life was irrelevant to any issues in the trial, a matter we need not decide, Paula's answer—she did not know how to answer—is not a response that affected the verdict in his trial.[10]

---

[8] *See Martinez*, 98 S.W.3d at 193. The subsequent questions the prosecutor asked that address the same topic addressed by the initial question include at least these questions the prosecutor asked Paula to address in the trial: (1) "[d]id you-all engage in sexual intercourse[;]" (2) "would you have sex on a regular basis[;]" (3) "what type of sexual acts would you-all do with each other[;]" and (4) "have you ever watched pornography with [Latner]."

[9] *Id.* (noting that, except for two situations that Latner has not argued apply to the facts of his case, "the law in Texas requires a party to continue to object each time inadmissible evidence is offered") (internal citations omitted).

For these reasons, Latner's first issue is overruled.

Hearsay

In issue two, Latner complains the trial court should have excluded some of the testimony of Bethany Sznajder, a licensed professional counselor with Children's Safe Harbor, who interviewed and treated Pam. Here, the record shows that Latner objected during Sznajder's testimony when the prosecutor asked her whether Pam mentioned anything about an anxiety attack, arguing the question called for hearsay. When the prosecutor responded to the objection, he explained the response was admissible because Pam revealed the information "for purposes of [her] treatment." The court overruled Latner's objection, noting that statements made by patients to obtain a medical diagnosis or treatment are admissible under an exception to the general rule that generally disallows hearsay.[11]

Sznajder then testified that, during therapy, Pam told her "she had an anxiety attack due to the sexual abuse." After that, the prosecutor asked Sznajder several

[10] Tex. R. App. P. 44.2(b) (indicating that except for constitutional error, a defect, irregularity, or variance that does not affect a party's "substantial rights must be disregarded").

[11] *See* Tex. R. Evid. 804(4) (directing that statement made for and reasonably pertinent to medical diagnosis or treatment describing the patient's medical history, past or present symptoms or sensations, their inception, or their general cause, are not excluded by the rule that prohibits hearsay).

8

follow-up questions about what Pam told her about Latner while in therapy, which comprised over 50 sessions. With the exception described above, Latner never objected to Sznajder's testimony about what Pam told her while in therapy.[12]

Turning to Latner's hearsay objection, we hold the trial court had the discretion to allow Sznajder to respond because the information Pam shared was relevant to her treatment. Our conclusion is supported by a case decided by the Texas Court of Criminal Appeals in 2018, which recognized that a child's statement, made to a licensed professional counselor while undergoing therapy and being treated for sexual abuse, is admissible under the hearsay exception that applies to statements made by patients seeking medical treatment.[13]

"A trial judge's decision on the admissibility of evidence is reviewed under an abuse of discretion standard and will not be reversed if it is within the zone of reasonable disagreement."[14] The trial court's ruling admitting Sznajder's testimony

---

[12] In his brief, Latner fails to point out how he preserved error with respect to most of the licensed counselor's testimony, with the sole exception of the one objection we specifically discussed above. Thus, Latner failed to properly preserve any complaints about anything the licensed counselor said except for the question and answer relevant to the licensed counselor's testimony to which Latner lodged an objection in the trial. *See Martinez*, 98 S.W.3d at 193.

[13] *See Taylor v. State*, 268 S.W.3d 571, 588 (Tex. Crim. App. 2008); Tex. R. Evid. 803(4).

[14] *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

9

about having "an anxiety attack due to the sexual abuse" fell within the trial court's discretion. For that reason, no abuse of discretion occurred. We overrule Latner's second issue.

Prior Statement of Victim

In issue three, Latner argues the trial court erred by admitting the testimony of Pam Traylor, the District Attorney's Office Victim Assistance Coordinator, describing what Pam told her when they talked about what Latner had done. In response, the State argues the portion of Traylor's testimony Latner objected to was properly admitted under the rule of optional completeness. That rule allows a party to introduce any part of a conversation "that is necessary to explain or allow the trier of fact to fully understand the part offered by the opponent."[15]

Here, the record shows Latner's strategy in the trial was to show that Pam told Traylor various specific details about what Latner did to her, which differed from the details Pam revealed while in therapy at Children's Safe Harbor and when she was examined by a forensic nurse. For instance, in opening statement, Latner's attorney referred to Pam's conversations with Traylor in 2017, stating that when they met Pam made "outlandish allegations" that had "never been mentioned before." Defense counsel also suggested that the jury "focus on" . . . "the inconsistency" in

---

[15] Tex. R. Evid. 107.

10

Pam's accounts based on what they heard from the witnesses in the trial. But defense counsel also revealed to the jury some of what he knew Pam told Traylor, explaining that when Pam talked with Traylor, Pam made sexually related statements about facts, which he described, that Pam had not mentioned when she was in therapy or when she was examined by other witnesses he expected would testify during the trial.

When the forensic nurse and Sznajder testified, Latner's attorney questioned them about what Pam did not tell them. His approach was consistent with his trial strategy, which asked the jury to focus on the discrepancies in Pam's accounts about what Latner did to her in the trial. After conferring on the matter at the bench about whether the prosecutor would be allowed to question Traylor regarding what Pam told her when they met, the trial court overruled Latner's objection to Traylor's testimony, and allowed Traylor to explain what Pam told her when they met.

At trial, the State argued that it was entitled to question Traylor about what Pam told her to evaluate Pam's credibility in light of Traylor's full account regarding what Pam said. According to the State, this testimony served to rebut Latner's claim that Pam gave different individuals somewhat different accounts. Relying on Rule 107 of the Texas Rules of Evidence, the State argues that Traylor's testimony about

11

what Pam told her was admissible under the rule of optional completeness.[16] The State notes the Court of Criminal Appeals has explained the rule of optional completeness "permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter opened up by the adverse party."[17] The *Walters* Court explained the rule "is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing."[18]

We need not rely on Rule 107 to reach our conclusion that no abuse of discretion occurred when the trial court allowed Traylor to testify about what Pam told her when they met. Here, even if her testimony about what Pam told her would not have otherwise been admissible, Latner's attorney opened the door to Traylor's testimony.[19] Although we cannot tell exactly why the trial court overruled Latner's

---

[16] *Id.*

[17] *Walters v. State*, 247 S.W.3d 204, 218 (Tex. Crim. App. 2007) (internal quotations omitted).

[18] *Id.*

[19] *See Dabney v. State*, 492 S.W.3d 309, 317 (Tex. Crim. App. 2016) (noting that although "a defensive opening statement is not itself evidence, the statement does inform the jury and the State of the nature of the defense to be raised and the State may rebut this anticipated defensive evidence in its case-in-chief"); *Powell v. State*, 63 S.W.3d 435, 439 (Tex. Crim. App. 2001) (noting that an opening statement

objection, we may affirm a ruling admitting evidence if it was correct under any theory of the law that applies to the case.[20]

In addition to opening the door to Traylor's full account, Latner fails to explain in his brief how he could have been harmed by Traylor's testimony. While it contains details of Latner's sexual acts, these details include nothing materially different from the acts Latner's attorney told the jury about in his opening statement.[21] While Latner globally claims the trial court's cumulative errors admitting evidence harmed him, he has not explained how Traylor's account harmed him given what he told the jury during opening statement about what he expected Traylor to say.

We hold that admitting Traylor's testimony was not error, but that if it was, Latner was not harmed given the strategy he employed in the trial.[22] For those reasons, we overrule Latner's third issue.

---

can open the door to admitting evidence "raised in a defendant's opening statement").

[20] *Klein v. State*, 273 S.W.3d 297, 312 (Tex. Crim. App. 2008) (cleaned up).

[21] Tex. R. App. P. 44.2(b).

[22] *Id.*

13

Ineffective Assistance

In issue four, Latner complains his attorney was ineffective by "allowing the trial court, without objection, to respond to" the notes the jury sent to the court asking that it allow the jury to rehear a small part of the testimony given by two of the witnesses who testified in the trial. Latner suggests that before the trial court allowed the jury to rehear the testimony, his attorney should have asked the trial court to comply with the requirements of article 36.28 of the Code of Criminal Procedure. It requires that jurors disagree about the statement of a witness before the jury can hear the witness's testimony again.[23]

To establish a claim of ineffective assistance of counsel, the defendant must show the attorney performed in a manner that fell below an objective standard of reasonableness, and that, but for counsel's alleged error, the outcome of the proceedings would, in all probability, have been different.[24] When asserting an

---

[23] *See* Tex. Code Crim. Proc. Ann. art. 36.28 ("In the trial of a criminal case in a court of record, if the jury disagrees as to the statement of any witness they may, upon applying to the court, have read to them from the court reporter's notes that part of such witness testimony or the particular point in dispute, and no other; but if there be no such reporter, or if his notes cannot be read to the jury, the court may cause such witness to be again brought upon the stand and the judge shall direct him to repeat his testimony as to the point in dispute, and no other, as nearly as he can in the language used on the trial.").

[24] *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).

14

ineffective assistance claim, the defendant bears the burden of developing the facts needed to show his attorney was ineffective, under the standards identified by the United States Supreme Court in *Strickland*.[25] Generally, to prove counsel was ineffective, the defendant must overcome the "strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."[26]

Here, the record shows that Latner did not claim ineffective assistance of counsel at any stage of the proceedings below. For that reason, nothing in the appellate record explains why counsel chose not to require the trial court to determine whether jurors disagreed about what the witnesses had said when they testified. And to find trial counsel ineffective without a record where counsel was allowed to explain the actions the defendant criticizes for the first time on appeal, the conduct being challenged must be so outrageous that no competent attorney would have engaged in it.[27]

---

[25] *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994) (citing *Strickland*, 466 U.S. at 689).

[26] *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999) (citing *Strickland*, 466 U.S. at 689).

[27] *Menefield v. State*, 363 S.W.3d 591, 592-93 (Tex. Crim. App. 2012).

On this record, we can only speculate about why trial counsel might have chosen not to require the trial court to strictly follow the requirements of article 36.28. We cannot say the choice was not based on a reasonable trial strategy. Because Latner failed to show the challenged conduct was outrageous or show that no competent attorney would have allowed the jury to rehear the testimony in question, we overrule Latner's fourth issue.[28]

Having overruled all of Latner's issues, the judgments in Trial Court Cause Numbers 15-12-12824-CR and 15-07-07313-CR are

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on January 29, 2020
Opinion Delivered March 4, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

---

[28] *Thompson*, 9 S.W.3d at 813.