## In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-19-00190-CV
_____

## ALEXANDRO CAMACHO, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 7th District Court**
**Smith County, Texas**
**Trial Cause No. 007-0235-19**

## MEMORANDUM OPINION

Alexandro Camacho appeals his second-degree felony conviction for the

offense of evading arrest or detention.[1] A Smith County jury convicted Camacho

---

[1] Camacho had a prior conviction for evading arrest or detention, to which he pled "true" making this a state jail felony offense. *See* Tex. Penal Code Ann. § 38.04(b)(1). The State also alleged enhancements in the indictment for a prior theft conviction and retaliation conviction but subsequently abandoned those two enhancements as alleged in the indictment. Instead, the State sought higher punishments based on enhancements for prior felony convictions of retaliation and burglary of a habitation pursuant to a *Brooks* notice to which Camacho also pled "true" during the punishment phase.

1

and assessed punishment at eighteen years' confinement, plus a fine of $1500.00.[2] The trial court sentenced Camacho accordingly. In one issue, Camacho argues the trial court erred by admitting testimony of his gang affiliation during the guilt/innocence phase of his trial, which was inadmissible under Texas Rules of Evidence 402 and 404. *See* Tex. R. Evid. 402, 404. We affirm the trial court's judgment.

## Background

While on parole for a fifteen-year theft conviction, Camacho became the subject of another criminal investigation.[3] Upon learning of Camacho's possible location on the night of December 13, 2018, police converged upon a known high-crime area near a park in Tyler, Texas. Multiple Tyler Police Department officers were staged at several locations in the area.

Two of these officers were partners Main and Simington. The officers were normally assigned to the bicycle unit, which focuses on street crime, including drugs and gang activity, but on the night in question, these officers were in a marked Tyler police vehicle and in uniform. The vehicle was equipped with a "push guard" and lights on the front bumper. When the officers observed Camacho walking down the

---

[2] This case was transferred to this Court from the Twelfth Court of Appeals in Tyler, Texas pursuant to a docket equalization order. *See* Tex. Gov't Code Ann. § 73.001.

[3] During the trial, Camacho admitted he had an outstanding warrant for violating parole on a 2011 theft conviction.

street, they approached him in the vehicle without the lights or sirens activated. The officers testified that they shone the vehicle's spotlight on Camacho and exited the vehicle.

Camacho testified that he saw "a big bright light[,]" that he could tell was behind him. Camacho explained that he turned his head to the side but never completely turned around to see where it was coming from. He denied being able to see the police markings on the side of the vehicle. Camacho described the area he was in at the time as a bad neighborhood where people are shot and drugs are dealt. He testified that he was afraid when he heard someone running behind him and, instead of looking to determine who it was, he ran.

Both officers testified that as soon as they exited the vehicle, they commanded Camacho to stop and identified themselves as "Tyler PD[,]" but Camacho immediately began running away from them. Officer Simington testified that Camacho looked in their direction, and he believed there was no reason Camacho would not have been able to see them. Camacho admitted he ran but denied knowing they were police officers. He initially testified that he never heard anyone tell him to stop or identify themselves as police. However, on cross-examination, Camacho conceded that he heard someone say, "Stop." He continued to deny that he heard anyone identify themselves as police. The primary dispute here was whether Camacho knew law enforcement officers were pursuing him when he ran.

3

A discussion occurred outside of the hearing of the jury during a bench conference. In an attempt to rebut Camacho's testimony that he was fearful in this crime-ridden neighborhood, the State sought to elicit testimony from him regarding his gang affiliations. Defense counsel responded by denying that Camacho running out of fear was a defensive theory and stated that he "[didn't] believe it opened the door[.]" The trial court overruled this "objection" and allowed the State to question Camacho regarding his gang affiliations. During the State's cross-examination, Camacho initially denied having any gang tattoos entirely and denied being affiliated with two separate gangs. He later changed his testimony and said he had one gang tattoo. Upon further examination, Camacho also admitted to being a member of a prison gang.

Based on Camacho's denials, the State called a gang expert, Tyler Police Detective Chris Miller, as a rebuttal witness. Detective Miller testified that Camacho had tattoos linked to two separate gangs, including East Side Locos and Valluco, a prison gang, and further explained that they had photographs of these tattoos. The defense did not request a running objection, did not request a hearing outside the jury's presence, and did not object during any portion of Detective Miller's testimony.

After he was convicted and sentenced to eighteen years of confinement, Camacho timely appealed.

## Preservation of Error

On appeal, Camacho argues that pursuant to Texas Rules of Evidence 402 and 404, the trial court should have sustained his objections to (1) Camacho's testimony on cross-examination regarding his gang involvement, and (2) the testimony of Detective Miller regarding Camacho's gang affiliation. He further asserts that the erroneous admission of this evidence was harmful.

During cross-examination, the State elicited testimony from Camacho that he was in a bad neighborhood, he was scared, and he took off running without looking to see who was behind him. In response to this, during a bench conference, the State argued it was entitled to question Camacho regarding his gang involvement to counter Camacho's portrayal of himself as a person who was so afraid in that neighborhood that he would run rather than confront anyone or find out who was behind him. Defense counsel countered at the bench conference that he "[didn't] believe it opened the door[,]" and the trial court overruled the objection.[4]

While the record reveals that defense counsel objected out of the jury's hearing at a bench conference prior to Camacho's testimony, Camacho did not object at any time before, during, or after Detective Miller's testimony. We conclude that Camacho failed to preserve error regarding the gang related testimony. *See* Tex. R.

---

[4] In his brief, Camacho concedes that "the objection made at trial to the gang testimony is not as clear as one might prefer."

App. P. 33.1(a) (requiring a timely objection as a requisite to presenting a complaint for appellate review); *see also Martinez v. State*, 98 S.W.3d 189, 193 (determining that objections to photographs did not preserve error for all other gang related testimony). A party must continue to object each time inadmissible evidence is offered, and the Court of Criminal Appeals has explained that "'it is well settled that an error in admission of evidence is cured where the same evidence comes in elsewhere without objection; defense counsel must object every time allegedly inadmissible evidence is offered.'" *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991) (quoting *Hudson v. State*, 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)); *see also Gillum v. State*, 888 S.W.2d 281, 285 (Tex. App.—El Paso 1994, pet. ref'd) (explaining that objection outside jury's presence concerning only one witness failed to preserve error for a subsequent witness absent further objection).

Defense counsel's objections to Camacho's testimony did not preserve error for the detective's gang related testimony. *See Martinez*, 98 S.W.3d at 193. Further, if there was any error in allowing the State to cross-examine Camacho on this issue, it was cured by the unobjected-to testimony of Detective Miller after Camacho testified.[5] *See Gillum*, 888 S.W.2d at 284–85 (noting that "[e]rror in the admission of evidence is cured when the same evidence is admitted elsewhere without

---

[5] For purposes of our analysis, we will assume, without deciding, that allowing the State to cross-examine Camacho regarding his gang affiliation over defense objection constituted error.

6

objection"). Detective Miller described Camacho's various tattoos and testified that several of the tattoos were linked with street gangs and a prison gang, contradicting Camacho's repeated denials that he had any tattoos associated with gangs or that he was a gang member.

We overrule Camacho's sole issue for lack of preservation.

## Conclusion

By failing to object each time gang related evidence was offered, Camacho failed to preserve his complaint regarding the gang related testimony. Accordingly, we affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on July 17, 2020
Opinion Delivered September 30, 2020
Do Not Publish

Before McKeithen, C.J., Kreger, and Johnson, JJ.

7