NO. 07-08-00523-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL C

 

 MARCH 24, 2010



 



 

ALBERT MARTINEZ, JR., APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE 364TH DISTRICT COURT OF LUBBOCK
COUNTY;

 

NO. 2005-408,839; HONORABLE BRADLEY S. UNDERWOOD, JUDGE



 



 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

 

 

OPINION

 

 

            Appellant,
Albert Martinez, Jr., appeals his conviction for the offense of capital murder
and sentence of life imprisonment in the Institutional Division of the Texas
Department of Criminal Justice.  We
affirm.

Background

            On
October 26, 1996, Eva Garcia was murdered and her battered and naked body was
left behind a row of bushes next to a Lubbock church.  Police were called to the scene by the pastor
of the church after he discovered the body on the morning of October 27.  Officer Bruce Short, one of the investigating
police officers, opined that Garcia had struggled against her assailant and
that it appeared that her clothes had been forcibly removed.  Short further opined that it appeared that
Garcia had been strangled and had received multiple blunt force trauma
injuries.  The police recovered multiple
items from the scene that were submitted to the Department of Public Safety
Crime Laboratory in Lubbock for analysis and testing.  None of the analysis and testing provided the
police any leads and, in fact, excluded the only suspects.  As a result, the case became a “cold case.”

            Two
days after the discovery of the body, a blood stain was discovered on the wall
of the church some distance away from where the body had been located.  A swab was taken of this blood stain and it
was submitted for testing.  The results
of the testing excluded Garcia as the source of the blood.  In December of 2003, the swab of blood taken
from the church wall was retested and the results of that testing was entered
into the Combined DNA Index System (CODIS), a national database that stores
known DNA profiles to generate leads in unsolved cases.  In 2004, the Lubbock Police Department was
notified by CODIS that the DNA found in the blood swab had been matched to an
individual within the database. 
According to a CODIS report, the DNA found in the blood swab matched
appellant’s DNA.  The Lubbock Police
Department obtained a blood sample from appellant and compared it to the blood
swab obtained from the location of Garcia’s body.  The result of this comparison was that
appellant could not be excluded as the contributor of the blood found at the
location where Garcia’s body was discovered and that the probability of
selecting a random Hispanic person that could be the source of the blood stain
would be 26.44 quadrillion to one.  

            As
a result of the genetic matching of appellant to the blood stain found at the
scene of the crime, appellant became the primary suspect in the murder of
Garcia.  Appellant was taken into custody
while the case was investigated.  As part
of the investigation, appellant was interviewed by Detective Martinez four
times over the course of a week.  During
these interviews, appellant gave statements to Martinez in which appellant
accepted responsibility “for what happened to” Garcia and admitted to beating a
woman on October 26.  Further, while in
custody, appellant made phone calls in which he admitted his involvement in the
murder of Garcia, but stated that he did not act alone.  In one of these calls, appellant stated that
“I was there when they were hitting her and the fucking, you know?  but I wasn’t the only one, you hear me?”[1]

            Appellant
was tried for the offense of capital murder. 
Following the trial, the jury returned a verdict finding appellant
guilty of capital murder, as charged in the indictment.  Following the jury verdict, the trial court
sentenced appellant to a capital life sentence in the Institutional Division of
the Texas Department of Criminal Justice. 
Appellant timely filed notice of appeal of the conviction and sentence.

            By
three issues, appellant challenges the trial court’s Judgment of Conviction by
Jury.  By his first issue, appellant
contends that the trial court violated appellant’s Sixth Amendment right to
confront and cross-examine witnesses against him when it allowed Dr. Thomas
Beaver to testify from an autopsy report prepared by another doctor.  By his second and third issues, appellant
contends that the evidence was legally and factually insufficient to support
the jury’s verdict that appellant committed murder during the course of
committing or attempting to commit aggravated sexual assault.  We will address appellant’s sufficiency
challenges first.

Sufficiency of the Evidence

            By his second and third issues, appellant challenges both
the legal and factual sufficiency of the evidence, specifically as it relates
to the sufficiency of the evidence to support the finding that he committed
murder during the course of committing or attempting to commit aggravated
sexual assault.  When both legal and
factual sufficiency is challenged, we are required to conduct an analysis of
the legal sufficiency of the evidence first and then, only if we find the
evidence to be legally sufficient, do we analyze the factual sufficiency of the
evidence.  See Clewis
v. State, 922 S.W.2d 126, 133 (Tex.Crim.App.
1996).

Standard of Review

            In assessing the legal sufficiency of the evidence, we
review all the evidence in the light most favorable to the verdict to determine
whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307,
319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Clayton
v. State, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007).  In conducting a legal sufficiency review, it
is assumed that the trier of fact resolved conflicts
in the testimony, weighed the evidence, and drew reasonable inferences in a
manner that supports the verdict.  Clayton,
235 S.W.3d at 778.  An appellate court
may not sit as a thirteenth juror, but rather must uphold the jury’s verdict
unless it is irrational or unsupported by more than a mere modicum of
evidence.  Moreno v. State, 755
S.W.2d 866, 867 (Tex.Crim.App. 1988).

            When an appellant challenges the factual sufficiency of
the evidence supporting his conviction, the reviewing court must determine
whether, considering all the evidence in a neutral light, the jury was
rationally justified in finding the appellant guilty beyond a reasonable
doubt.  See Watson v. State,
204 S.W.3d 404, 415 (Tex.Crim.App. 2006).  In performing a factual sufficiency review,
we must give deference to the fact finder’s determinations if supported by
evidence and may not order a new trial simply because we may disagree with the
verdict.  See id. at
417.  As an appellate court, we are not
justified in ordering a new trial unless there is some objective basis in the
record demonstrating that the great weight and preponderance of the evidence
contradicts the jury’s verdict.  See
id.  Additionally, an appellate
opinion addressing factual sufficiency must include a discussion of the most
important evidence that appellant claims undermines the jury’s verdict.  Sims v. State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

            To
prove appellant guilty of the indicted offense, the State had to prove: 1)
appellant, 2) intentionally, 3) caused the death of Garcia, 4) while in the
course of committing or attempting to commit the offense of aggravated sexual
assault of Garcia.  Tex. Penal Code Ann. § 19.03(a)(2)
(Vernon Supp. 2009).  As applicable to
the case before us, a person commits the offense of aggravated sexual assault
if the person intentionally or knowingly causes the penetration of the sexual
organ of another by any means, without that person’s consent.  Id. § 22.021(a)(1)(A)(i).  In a capital
murder case, the intent to commit aggravated sexual assault must be formed
prior to or concurrent with the murder.  See
Herrin v. State, 125 S.W.3d 436, 441 (Tex.Crim.App.
2002).

Legal Sufficiency

            Appellant
contends that the State failed to present legally sufficient evidence to
establish that he murdered Garcia during the course of committing or attempting
to commit aggravated sexual assault. 
However, evidence was presented to the jury that Garcia’s clothes had
been forcibly ripped from her body and her body was found naked.  Further, Garcia’s body was found with abrasions,
lacerations, and contusions in the external genitalia as well as a severe
laceration in her vagina.  Finally, the
jury heard appellant’s phone conversation in which he stated, “I was there when
they were hitting her and the fucking, you know?  but I wasn’t the only one, you hear me?”  From this evidence, viewed in the light most
favorable to the verdict, we cannot say that the jury acted irrationally in
finding appellant guilty of capital murder beyond a reasonable doubt.  See Jackson, 443 U.S. at 319; Clayton,
235 S.W.3d at 778.

Factual Sufficiency

            Because
we find the evidence to be legally sufficient, we must next review the evidence
in a neutral manner to determine whether the jury was rationally justified in
finding appellant guilty beyond a reasonable doubt.  Watson, 204 S.W.3d at 415.  When conducting a factual sufficiency review,
we must remain mindful that the jury has already passed on the evidence and
their conclusions are entitled to deference when supported by the
evidence.  Id. at 417.  Further, we cannot supplant the jury’s
verdict simply because we might disagree, rather we must be able to state with
particularity where the deficiency in the evidence to support the jury’s
determination exists.  Id.

            Appellant
contends that there is a “complete lack of forensic evidence demonstrating a
sexual assault occurred.”  Appellant
points to the fact that the laceration of Garcia’s vagina was established to
have occurred postmortem and contends that this is the only evidence of
penetration of Garcia’s sexual organ.  

            While
appellant’s characterization of the evidence is correct, his contention that
this makes the evidence factually insufficient is in error.  It is sufficient to find that appellant
committed capital murder if the evidence supports that appellant murdered
Garcia while attempting to commit aggravated sexual assault.  See Tex.
Penal Code Ann. § 19.03(a)(2).  As
such, the State was not required to prove that appellant actually committed
aggravated sexual assault on Garcia.  The
evidence that Garcia’s clothes had been forcibly removed, the antemortem injuries to Garcia’s genitals, and appellant’s
statement that he was present during the “fucking” of Garcia[2]
is sufficient evidence to allow a rational jury to conclude that appellant
murdered Garcia while attempting to commit aggravated sexual assault.  

            Accordingly,
we find that the evidence to support appellant’s conviction for the offense of
capital murder was both legally and factually sufficient.  Therefore, we overrule appellant’s second and
third issues.

Confrontation

            By
his first issue, appellant contends that his Sixth Amendment right to confront
the witnesses against him was violated by the admission of testimonial hearsay
evidence, specifically information contained in the report from the autopsy on
Garcia’s body.  The medical examiner who
conducted the autopsy, Dr. Randy Frost, did not testify.  Instead, the State called the chief medical
examiner for Lubbock County, Dr. Thomas R. Beaver, who was not present at the
autopsy, to testify regarding the examination of the body and to give his
opinions regarding Garcia’s injuries and the cause of her death.  Appellant contends that he was denied his
constitutional right to confront Frost and challenge his findings and
conclusions contained in his autopsy report.

Standard of Review

            The
Sixth Amendment provides that, “[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the
witnesses against him.”  U.S. Const. amend. VI.  The confrontation right also applies to
out-of-court statements that are testimonial in nature.  Crawford v. Washington, 541 U.S. 36,
51, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  The Confrontation Clause forbids the
admission of testimonial hearsay unless the declarant
is unavailable to testify and the defendant had a prior opportunity to
cross-examine the declarant.  Id. at 68.  Whether a particular out-of-court statement
is testimonial is a question of law.  De
La Paz v. State, 273 S.W.3d 671, 680 (Tex.Crim.App.
2008).  Generally speaking, a hearsay
statement is testimonial when the surrounding circumstances objectively
indicate that the primary purpose of the interview or interrogation is to
establish or prove past events potentially relevant to later criminal
prosecution.  Id.  Error in admitting evidence in violation of a
defendant’s confrontation right is constitutional error, which necessitates
reversal unless the reviewing court determines beyond a reasonable doubt that
the error did not contribute to the conviction or punishment.  See Tex.
R. App. P. 44.2(a); Wood v. State, 299 S.W.3d 200, 214 (Tex.App.—Austin 2009, pet. filed).  

The Autopsy Report

            Appellant
contends that the contents and results of Frost’s autopsy report were
testimonial out-of-court statements that, as such, are subject to the
Confrontation Clause of the Sixth Amendment. 
Appellant contends that the admissibility of statements contained in
Frost’s autopsy report depends on an evaluation of the reasons the declarant made the statements.  If these statements were made in anticipation
for use in a later criminal trial, they are testimonial and subject to
appellant’s confrontation right. 
Appellant relies on Melendez-Diaz v. Massachusetts, 2009 U.S.
LEXIS 4734, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009),
to support his argument.  

The State contends that the recent Wood
decision of the Austin Court of Appeals was wrongly decided and should not be
followed by this Court.  The court, in Wood,
construes Melendez-Diaz in much the same way that appellant does in this
appeal[3]
and concludes that the autopsy report involved in that case was testimonial
hearsay subject to the Confrontation Clause of the Sixth Amendment.  See Wood, 299 S.W.3d at
209-10.  The State argues that Wood
overlooked a distinction drawn in Melendez-Diaz, 2009 U.S. LEXIS 4734,
at *27-*28, between business records created as a regular part of a business’s
activity and business records created for use in the courts.  In making its argument, the State relies upon
the statutory requirement that a medical examiner conduct an inquest whenever
there is an unexplained death, regardless of whether there is suspicion that a
crime has occurred.  See Tex. Code Crim. Proc. Ann. art. 49.25,
§ 6(a).

            The
Austin Court of Appeals acknowledged that a medical examiner is statutorily
required to conduct an inquest whenever the cause of a person’s death is
unknown.  Wood, 299 S.W.3d at
209.  However, the court also noted that
the statute specifically requires the medical examiner to perform an autopsy
when a person dies under circumstances warranting the suspicion that death was
caused by unlawful means.  Id.
(citing Tex. Code Crim. Proc. Ann.
art. 49.25, § 6(a)(4)).  If the cause of
death is determined beyond a reasonable doubt, the medical examiner must file a
report stating the cause of death with the district, criminal district, or
county attorney.  Id. (citing Tex. Code Crim. Proc. Ann. art. 49.25,
§ 9(a)).  Further, an autopsy must be
performed if requested by the district, criminal district, or county
attorney.  Id.  Because the statutory prerequisites giving
rise to the medical examiner’s duty to perform an autopsy varies greatly, the
Austin court expressly stated that, “We do not hold that all autopsy reports
are categorically testimonial.”  Id.  The court then analyzed the facts of that
case and held that, because the circumstances surrounding the victim’s death
warranted the police in the suspicion that his death was a homicide, the police
evidence specialist attended the autopsy, and it was a reasonable assumption
that the medical examiner performing the autopsy understood that the report
containing her findings and conclusions would be used prosecutorially,
the autopsy report was a testimonial statement and the medical examiner
performing the autopsy was a witness against the defendant within the meaning
of the Confrontation Clause.  Id.
at 209-10.

            We
agree with the analysis of our sister court in Wood.  That the medical examiner may be required to
perform an autopsy on a body when there is no suspicion that the death was tied
to criminal activity does not justify this Court abdicating its duty to
determine whether the primary purpose of the autopsy report was to establish or
prove past events potentially relevant to later criminal prosecution.  See De La Paz, 273 S.W.3d at
680.  In the present case, the
circumstances surrounding Garcia’s death warranted the police to suspect that
Garcia had been killed, an officer attended the autopsy and took photographs of
the body, and it was reasonable for Frost to have assumed that his autopsy
report would be used prosecutorially.  Since the statutory basis giving rise to
Frost’s duty to perform the autopsy was that the circumstances surrounding
Garcia’s death warranted the suspicion that the death was caused by unlawful
means, see Tex. Code Crim. Proc.
Ann. art. 49.25, § 6(a)(4), we hold that Frost’s autopsy report was a
testimonial statement and that Frost was a witness within the meaning of the
Confrontation Clause of the Sixth Amendment. 


Beaver’s Testimony

            However,
while we have found Frost’s autopsy report to be testimonial, the autopsy
report was not admitted into evidence in appellant’s trial.  Rather, Beaver testified to his own opinions
regarding Garcia’s injuries and death and was, of course, subject to
cross-examination by appellant.  Beaver
did, however, testify that he relied on the contents of the autopsy report as a
basis for his opinions.  

            After
Beaver introduced himself and briefly summarized his education and experience,
the prosecutor asked him if he could read Frost’s autopsy report and view the
photographs and substantiate the findings made by Frost.  Appellant indicated that he had an objection
and requested a conference at the bench. 
At the bench conference, appellant stated, “we would object to this
witness testifying as to the autopsy report. 
Initially its hearsay, but we’re also in violation of confrontation
clause under Crawford versus Washington, Your Honor.”  The trial court overruled appellant’s
objection without further discussion.[4]  While this objection was sufficient to
preserve error in regard to the contents and conclusions contained in the
autopsy report, it did not notify the trial court of any error in the admission
of the photographs upon which Beaver based his testimony.

            Reviewing
Beaver’s testimony, it is clear that the majority of his testimony was based on
his review of the photographs taken during the autopsy.  Based on these photos, Beaver opined that
Garcia suffered extensive blunt force trauma injuries, but that she most likely
died from asphyxia or, in other words, strangulation.  

During Beaver’s testimony, he was
asked, on two separate occasions, about his opinion based on his review of the
photographs and Frost’s autopsy report.[5]  Under Texas Rule of Evidence 703, an expert
witness may base an opinion on facts or data that are not admissible in
evidence, provided that the inadmissible facts or data are of a type reasonably
relied upon by experts in the particular field. 
Tex. R. Evid.
703.  The Confrontation Clause is not
violated merely because an expert bases an opinion on inadmissible testimonial
hearsay.  Wood, 299 S.W.3d at
213.  This is so because the testifying
expert’s opinion is not hearsay and the testifying expert is available for
cross-examination regarding his opinion. 
Id.  Because in these
specific instances Beaver did not disclose the testimonial hearsay upon which
his expert opinion was based, the jury only heard the direct, in-court
testimony of Beaver and appellant’s confrontation rights were not
violated.  See Id.

However, Beaver did disclose to the
jury certain testimonial statements contained in the autopsy report.  Texas Rule of Evidence 705(d) permits an
expert to disclose inadmissible facts or data underlying his opinion, but only
if the value of the inadmissible evidence disclosed is not outweighed by the
danger that the inadmissible evidence will be used for another, impermissible
purpose.  Tex. R. Evid. 705(d); Wood,
299 S.W.3d at 213.  In the present case,
the facts and data in the autopsy report explained and supported Beaver’s
opinions only if those facts and that data were deemed true.  Thus, under the circumstances of this case,
the disclosure of the out-of-court testimonial statements underlying Beaver’s
opinions, even if offered only for the purpose of explaining and supporting
those opinions, constituted the use of testimonial statements to prove the
truth of the matters asserted in violation of the Confrontation Clause.  Wood, 299 S.W.3d at 213.

Harm Analysis

Having found that portions of
Beaver’s testimony violated appellant’s confrontation rights, we must analyze
the erroneously admitted evidence to determine if it was harmful to
appellant.  Because the error was
constitutional error, we must reverse appellant’s conviction unless we are
satisfied beyond a reasonable doubt that the error did not contribute to the
conviction or punishment.  See Tex. R. App. P. 44.2(a); Delaware v.
Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); Langham
v. State, No. PD-1780-08, 2010 Tex.Crim.App.
LEXIS 21, at *34-*35 (Tex.Crim.App. March 3,
2010).  In determining whether constitutional
error under Crawford
may be declared harmless beyond a reasonable doubt . . . the following factors
are relevant: 1) how important was the out-of-court statement to the State's
case; 2) whether the out-of-court statement was cumulative
of other evidence; 3) the presence or absence of evidence corroborating or
contradicting the out-of-court statement on material points; and 4) the overall
strength of the prosecution's case.  Langham, 2010 Tex.Crim.App.
LEXIS 21, at *35 (quoting Scott v. State, 227 S.W.3d 670, 690-91 (Tex.Crim.App. 2007)). 
Appellant contends that Beaver’s use of inadmissible testimonial hearsay
harmed him because it was used to establish the manner and means of Garcia’s
death, it was used to prove that appellant was guilty of murder rather than
aggravated assault, and failure to reverse appellant’s conviction could
encourage the State to repeat the violation of the Confrontation Clause found
in this case.

None of appellant’s contentions are
persuasive.  As to the cause of death,
Beaver testified that it was his opinion, based on the photographs, that Garcia
had been choked, the choking had caused numerous abrasions to Garcia’s neck as
the assailant’s hands shifted on her neck, and Garcia died from “. . . some
sort of strangulation, some sort of asphyxia death.”  None of this testimony was in violation of
the Confrontation Clause because it constituted the opinions of the expert
witness that was on the stand and subject to cross-examination.  See Wood, 299 S.W.3d at
213.  Thus, while it is true that Beaver
informed the jury that Frost had found the cause of Garcia’s death to be
asphyxiation, Frost’s opinion is cumulative of other, properly admitted
evidence and, as such, is harmless beyond a reasonable doubt.  See Langham,
2010 Tex.Crim.App. LEXIS 21, at *35.  As to appellant’s contention that Frost’s
testimonial hearsay was used to establish that appellant was guilty of murder
rather than aggravated assault, appellant relies on a confessional statement
that he made in which he stated that Garcia was alive when he left the scene of
the crime.  However, Beaver testified
that neither he nor Frost were able to determine a time of death.  Nothing in Beaver’s testimony refuted
appellant’s defensive theory that he was guilty of only aggravated
assault.  As a result, we conclude that
the jury must have found appellant guilty of capital murder based on other
evidence.  Finally, appellant contends
that the failure to reverse appellant’s conviction could have the effect of
encouraging the State to repeat the error found in this case by using
sponsoring witnesses in lieu of the actual medical examiner that performed the
autopsy.  However, the potential of
future abuses by the State is not demonstrated by appellant’s analysis to have
caused harm in this case. 

Looking specifically to those
statements from Frost’s autopsy report that were admitted into evidence through
Beaver’s testimony, we conclude that the error was harmless.  Beaver identified that Frost concluded that
the cause of Garcia’s death was asphyxiation. 
However, as discussed above, Frost’s conclusion regarding cause of death
was cumulative of Beaver’s opinion and of the photographs that showed extensive
injuries to Garcia’s neck consistent with strangulation.  Additionally, we note that the indictment of
appellant indicated that the cause of Garcia’s death was either strangulation
or blunt force trauma.  All of the
evidence presented regarding the injuries suffered by Garcia were consistent
with either strangulation or blunt force trauma.  Beaver also testified regarding the livor findings made by Frost.  Initially, we note that this testimony was
elicited by appellant during cross-examination. 
Further, the testimony regarding the livor
found in Garcia’s body was never tied to anything that would make this
testimony relevant to the issue of whether appellant was guilty of murder.  The only testimonial hearsay evidence that
was admitted that was not cumulative or irrelevant actually favored
appellant.  Beaver testified that Frost’s
report found that Garcia’s blood-alcohol level was at a .20 and that Garcia had
pharmaceutical narcotics in her urine. 
While Beaver opined that these findings did not contribute to Garcia’s
death, the evidence that Garcia was intoxicated was potentially exculpatory in
that it might have suggested that Garcia died as a result of an accident.  

Looking to the factors that we must
consider in determining whether error in this case may be declared harmless
beyond a reasonable doubt, the disclosure of Frost’s conclusion regarding the
cause of Garcia’s death was cumulative of other evidence that was properly
presented to the jury and, as such, was not of great import to the State’s
case.  Further, significant evidence was
admitted that would corroborate that appellant murdered Garcia by strangulation
or blunt force trauma and the State’s case against appellant, even without
considering the inadmissible testimony regarding Frost’s opinions, was strong.  See Langham, 2010 Tex.Crim.App.
LEXIS 21, at *35.  While the admission of
the testimonial hearsay from Frost’s autopsy report violated the Confrontation
Clause, we are satisfied beyond a reasonable doubt that the disclosure of this
information did not contribute to appellant’s conviction or punishment.  See Tex.
R. App. P. 44.2(a); Wood, 299 S.W.3d at 215.  

For the foregoing reasons,
appellant’s first issue is overruled.

Conclusion

            Having
overruled each of appellant’s issues, we affirm the judgment of the trial
court.

                                                                                                                                                                                                                                                            Mackey
K. Hancock

                                                                                                            Justice

Publish.  











[1] Appellant’s phone
conversation alternated between English and Spanish and the quoted statement
was made in Spanish.  However, at trial,
the State had the conversations translated and transcribed and the
transcription of these calls were offered as demonstrative evidence to aid
those jury members that do not understand Spanish.  Appellant stated that he had no objection to
these transcriptions.





[2] Appellant contends
that the context of the use of the word that was translated to “fucking” makes
it apparent that appellant was referring to beating Garcia and not to sexual
activity.  However, appellant raised no
objection to the use of the translation as a demonstrative aid in the trial
court and, in cross-examination of the translator, presented evidence to the jury
that the word used by appellant could be translated as a sexual act, messing
around, or messing someone up.  However,
the jury was tasked with determining the facts, specifically what was the
proper translation, and the weight that should be afforded to this evidence.  See Tex.
Code Crim. Proc. Ann. arts. 36.13, 38.04 (Vernon 2007); Lancon v. State, 253 S.W.3d 699, 705 (Tex.Crim.App. 2008). 
We must defer to the jury’s determination.  





[3] Appellant’s brief
does not directly address the Wood decision.  Appellant’s brief was filed with this Court
on August 25, 2009, while the Wood decision was issued on October 7,
2009.  Appellant did not file a reply
brief.





[4] The State concedes
that this objection was sufficient to preserve error in the admission of any
statements from the autopsy report.  See
Martinez v. State, 98 S.W.3d 189, 193 (Tex.Crim.App.
2003).





[5] Specifically, Beaver
was asked “And from your review of the autopsy report and the photographs taken
in this case, do you believe that a thorough job was done and a correct job was
done,” and “But they [the photographs] were, in your opinion, necessary to
explain the findings of Dr. Frost in his autopsy report.”