COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                                 NO.
2-08-309-CR

 

 

CLAUDE FREDERICK LANE                                                              APPELLANT

 

                                                             V.

 

THE STATE OF TEXAS                                                                             STATE

 

                                                       ------------

 

          FROM
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

 

                                                       ------------

 

                                  MEMORANDUM OPINION[1] ON

        APPELLANT=S PETITION FOR
DISCRETIONARY REVIEW

 

                                                       ------------

Pursuant
to rule of appellate procedure 50, we have reconsidered our previous opinion
upon reviewing Appellant Claude Frederick Lane=s
petition for discretionary review.[2]  We withdraw our March 11, 2010 opinion and
judgment and substitute the following.








A
jury convicted Appellant of two counts of sexual assault, found the sexual
offender notices true, and assessed Appellant=s
punishment at life imprisonment.  The
trial court sentenced him accordingly. 
In three points, Appellant contends that the trial court erred by
admitting hearsay, that the procedure in returning the verdicts at the guilt
stage rendered them ambiguous and inconsistent, and that he was deprived of
effective assistance of counsel.  Because
we hold that the trial court did not reversibly err and that Appellant has not
met his burden of proving ineffective assistance of counsel, we affirm the
trial court=s
judgment.

In
his first point, Appellant contends that the trial court erred by admitting
hearsay testimony concerning statements made to a nurse by the
complainant.  To preserve error, a party
must continue to object each time the objectionable evidence is offered.[3]  A trial court=s
erroneous admission of evidence will not require reversal when other such
evidence was received without objection, either before or after the
complained-of ruling.[4]

The
nurse testified as follows,

Q.      And what=s the first thing you
do after you get her consent or what=sCwhat=s the first thing you did after you got her
consent?

 

A.      The next thing that I do is I get their
history.  I have them tell me in their
words what happened.








Q.      What is the purpose of having them tell
you what happened?

 

A.      It=s so that we can form a nursing diagnosis so
that we can medically treat them.  That
way they=reCwe know where to look
for injuries.

 

Q.      And you use this statement that people
give you then for the purposes of your medical treatment and diagnosis?

 

A.      That=s correct.

 

Q.      And also to know what to be looking for
during your exam?

 

A.      Correct.

 

Q.      Okay. 
And what did she tell you with regards to her history in the statement
she made?

 

A.      She said thatCthat he said there
was puppies in the garage.  My eyes were
not dilated enough to see in the dark. 
There was a light at the end, in a room, and he said the puppies are in
there.

 

[Defense Counsel]:          I=mCI=m going to object to
this, Your Honor.  IfCif thisCI=m going to object to
it because it wasn=t madeCthose statements
weren=t madeC

 

THE COURT:        I=m sorry, I can=t hear you.

 

[Defense Counsel]:          I=m going to object to
them as not made for the purpose of diagnosis.

 

THE COURT:        All right.  That=s overruled.

 








THE WITNESS:     Okay. 
In the room, he said the puppies areCare in there.  He grabbed my neck and he let go and he
pulled my hair back.  He pulled my arm
backwards.  He made me undress myself.  He told me to get on my hands and knees and
he pushed my face to the floor and stuck his tongue on my butt and told me to
play with myself.  Then he made me suck
his dick.  Then he hit me in the
face.  

 

Then
he opened up wine.  He opened up the wine
with a screwdriver.  He made me open it
and told me not to pull any shit with it. 
That he made me stick my ass in the air and he grabbed me around my
mouth and I could not breath[e].  I wasChe was licking me
everywhere and stuck his tongue in my anal. 
He sucked my titties and made me suck his dick.  He made a phone call on my cell phone.  I was asking for cigarettes and wine so I
knew where he was.  I kept asking so I
knew where he wasCI=m sorry.

 

I
kept asking questions.  I grabbed my
purse and my phone and dove out the window when he went outside the door.

 

Q.      . . . 
Now, after she gives you this statement, what out of this statement do
you use to conduct your evaluation?

 

A.      It would indicate where to look for
injuries, like if she were shoved or grabbed, anything like that.  IfCwhat contact there was made, skin to skin, so
that I would be able to look for injuries, as well as collect evidence.

 

Q.      Now, is there alsoCafter theyCafter she gave you
the patient history, did you also go through kind of a laundry list of
questions for her?

 

A.      Yes.

 

Q.      And in that list of questions, did you ask
ifCif sheCifCif the Defendant
performed oral sex on her?

 

A.      Yes.

 

Q.      And what did she indicate?

 

A.      She said yes.








Q.      And did you ask if she performed oral sex
on the Defendant?

 

A.      Yes.

 

Q.      And what did she indicate?

 

A.      She said yes.

 

Q.      Did you ask her if he performed oral sex
by contacting her anus?

 

A.      Yes, I did.

 

Q.      And what did she indicate?

 

A.      She said yes.

 

Q.      And did she also indicate thatCthat he had touched
her genitals and that she had touched his genitals?

 

A.      Yes, she did.

 

Q.      Did she indicate whether or not the
Defendant ejaculated?

 

A.      She said no.

 

. . . . 

 

Q.      Did she describe for you where the assault
had occurred?

 

A.      Yes, she did.

 

Q.      What did she tell you?

 

A.      She said in the assailant=s
mom=s
garage.  [Emphasis
added.]








Appellant lodged only his
initial objection and never asked for a running objection.  Further, as Appellant concedes, the nurse=s
testimony regarding the complainant=s
statements was cumulative of the complainant=s
own testimony.  We overrule Appellant=s
first point.

In
his second point, Appellant contends that the trial court violated article
37.04 of the code of criminal procedure by sending the jury back to the jury
room to Aredo@ the
verdicts.  Article 37.04 provides, 

When
the jury agrees upon a verdict, it shall be brought into court by the proper
officer; and if it states that it has agreed, the verdict shall be read aloud
by the judge, the foreman, or the clerk. 
If in proper form and no juror dissents therefrom, and neither party
requests a poll of the jury, the verdict shall be entered upon the minutes of
the court.[5]

 

But
article 37.10(a) provides,

 

If
the verdict of the jury is informal, its attention shall be called to it, and
with its consent the verdict may, under the direction of the court, be reduced
to the proper form.  If the jury refuses
to have the verdict altered, it shall again retire to its room to deliberate, unless
it manifestly appear that the verdict is intended as an acquittal; and in that
case, the judgment shall be rendered accordingly, discharging the defendant.[6]

 

And in Reese v. State,
the following occurred:

The record reflects apparent confusion among
the jurors as to the verdict forms.  Upon
returning to the courtroom, the jury announced they had reached a verdict.  The trial court noticed that only the verdict
form in the sexual assault case had been signed by the jury; they had neglected
to return any verdict in the compelling prostitution case.  The trial court informed the jury that AYou forgot to sign a
verdict on one and all the jury needs to go back in there a minute@.  The jury again returned from deliberation
having found appellant Aguilty@ of the compelling
prostitution charge, but Anot guilty@ of the lesser
included charge of prostitution.  The
trial court admonished the jury as follows:








Well, sir, I am going to ask you to go back
in there one more time and read the Court=s Charge with regard to the offense of
compelling prostitution and whether or not you consider the lesser‑included
offense of prostitution.  I will have to
ask that you go back there one more time.

 

We note that appellant did not object to the
jury being sent back to deliberate at any time.[7]

 

In
affirming Reese=s conviction, the
Texas Court of Criminal Appeals explained,

 

The
second time the jury returned from deliberations, the trial judge found the
forms to be in conflict and insufficient. 
Due to this conflict, the trial court not only had the power to send the
jury back for further deliberations but it was his duty to do so.  Appellant did not object to the jury being
retired for further deliberation without any explanation from the bench, nor
did he request a jury poll at any point. 
Once an unambiguous verdict for both offenses was returned, the trial
court then read the verdicts aloud.

 

We
hold that the trial judge was correct in sending the jury back for further
deliberation, and did not err in the procedure employed in accepting the
verdict.[8]


Similarly, in the case
before us, the following proceedings occurred:

THE COURT:        All right.  Everybody but the foreman can be seated.  And, Mr. Foreman, it=s my understanding
the jury has reached a verdict; is that correct?

 

THE FOREPERSON:      Yes, Your Honor.

 

THE COURT:        Was this unanimous by all members?

 

THE FOREPERSON:      Yes, Your Honor.

 








THE COURT:        If you=ll present it to Ms.
LaCroix, I=ll read it.  You may be seated.  All right. 
Mr. Lane, let me ask you to stand.

 

As
to Count 1, we, the jury, find the Defendant Claude Frederick Lane guilty of
the offense of sexual assault as charged in Count 1.

 

And
Count Two, we, the jury, find the Defendant Claude Frederick Lane guiltyC

 

(A brief pause in proceedings.)

 

THE COURT:        I=ve been informed by my bailiff that the
foreman is telling me that they signed the wrongCI=m sorry.

 

THE BAILIFF:        Count 1 only.

 

THE COURT:        Well, let me send you back to the jury
room and I want y=all to redo your
verdict forms and do them correctly if you can.

 








Appellant did not object or
request to poll the jury.  After
returning again from the jury room, the jury returned unanimous verdicts of Anot
guilty@ on
Count One and Aguilty@ on
Counts Two and Three, maintaining their verdicts when polled.  The verdict form on Count One shows that the
foreman signed both the guilty and the not guilty verdicts, but the signature
in the blank for the guilty verdict is crossed through.  Unlike the record in Hay,[9]
a case on which Appellant relies, the record in the case before us shows that
the trial court received information from the foreman via the bailiff that the
verdict form on Count One was wrong. 
Further, while Appellant relies on the trial court=s
use of the plural Averdict forms@
when sending the jury back to correct the verdict on Count One, we are not
prepared to hold based solely on that language that the cautious trial court
erred by giving the jury a chance to review all of the verdicts before
accepting them.  Following Reese,
we hold that the trial court correctly sent the jury back for further
deliberations and followed the correct procedures in accepting the verdicts.[10]  We overrule Appellant=s
second point.








In
his third point, Appellant contends that he was denied effective assistance of
counsel by the election of the jury to assess punishment.  To establish ineffective assistance of
counsel, Appellant must show by a preponderance of the evidence that his trial
counsel=s
representation fell below the standard of prevailing professional norms and
that there is a reasonable probability that, but for counsel=s
deficiency, the result of the trial would have been different.[11]  Appellant contends that after defense counsel
unsuccessfully fought to bar the State from questioning Appellant about his
prior rape conviction should he testify at the guilt phase, no strategy
supported the election of the jury for punishment, especially because that
election allowed the State to refer to the sex offender enhancement paragraphs
at jury selection.  Appellant did not
raise ineffective assistance of counsel below.[12]  Further, he does not argue that the outcome
of his trial would have been somehow different had the trial court assessed his
punishment.[13]  Accordingly, Appellant has failed to satisfy
his burden of proving ineffective assistance of counsel.  We overrule Appellant=s third
point.

Having
overruled Appellant=s three points, we affirm
the trial court=s judgment.

 

 

LEE ANN DAUPHINOT

JUSTICE

 

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  April 29, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. R. App. P. 50.





[3]Martinez v. State, 98 S.W.3d 189, 193
(Tex. Crim. App. 2003) (citing Ethington v. State, 819 S.W.2d 854, 858
(Tex. Crim. App. 1991)); Fuentes v. State, 991 S.W.2d 267, 273 (Tex.
Crim. App.), cert. denied, 528 U.S. 1026 (1999).





[4]Leday v. State, 983 S.W.2d 713, 718
(Tex. Crim. App. 1998).





[5]Tex. Code Crim. Proc.
Ann. art. 37.04 (Vernon 2006).





[6]Id. art. 37.10(a).





[7]Reese v. State, 773 S.W.2d 314, 316
(Tex. Crim. App. 1989).





[8]Id. at 318 (citations
omitted).





[9]Hay v. State, 472 S.W.2d 157, 160
(Tex. Crim. App. 1971).





[10]See Reese, 773 S.W.2d at 318; see
also Tex. Code Crim. Proc. Ann. art. 37.10(a).





[11]Strickland v.
Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Salinas v. State, 163
S.W.3d 734, 740 (Tex. Crim. App. 2005); Mallett v. State, 65 S.W.3d 59,
62B63 (Tex. Crim. App.
2001); Thompson v. State, 9 S.W.3d 808, 812 (Tex. Crim. App.
1999); Hernandez v. State, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).





[12]See Salinas, 163 S.W.3d at 740 (AIn the majority of
cases, the record on direct appeal is undeveloped and cannot adequately reflect
the motives behind trial counsel=s actions.@) (quoting Mallett, 65 S.W.3d at 63).





[13]See Strickland, 466 U.S. at 694,
104 S. Ct. at 2068; see also Tex. Penal Code Ann. ' 12.42(c)
(Vernon Supp. 2009) (providing in relevant part that a person shall be
imprisoned for life if convicted of sexual assault and having a previous
conviction for aggravated sexual assault).