COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 JOSEPH MAURICE SUITERS, JR.,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00049-CR
  
                          Appeal from
  
 Criminal District
 Court No. 3
  
 of Tarrant County,
 Texas
  
 (TC # 1220848R)
 
 
 
 
  
  
 
 
  
  
 
 
  
  
 
 


                                                                  O
P I N I O N

 

            Joseph Maurice Suiters, Jr. was
charged by indictment with burglary of a habitation, with the intent to commit
theft against Lance Hill.  The State
sought to enhance Appellant’s punishment as a repeat offender based on a
previous conviction for aggravated assault with a deadly weapon.  Appellant pled guilty to the offense and true
to the enhancement paragraph, and the case proceeded to a jury trial on
punishment.[1]  The jury found Appellant guilty of the crime
as charged, found the repeat offender notice true and sentenced Appellant to
fifty years’ imprisonment in the Texas Department of Criminal Justice.  We affirm.

BACKGROUND

Charged
Offense - Burglary Of A Habitation

            On November 18, 2010, Appellant was
charged by indictment with burglary of a habitation, a second degree
felony.  According to the indictment, on
or about September 18, 2009, Appellant intentionally and knowingly, and without
consent, entered Lance Hill’s home with the intent to commit theft.  Appellant pled guilty to the offense and the
case proceeded to a jury trial on punishment. 
          

            At the punishment hearing, Lance
Hill testified that on September 18, 2009, he was asleep in his Fort Worth house
when he heard a “loud crunch/thud” on his door. 
Shortly thereafter, two black males entered his bedroom.  Hill made eye contact with the larger of the
two men.  The man then nudged his partner
and the two men exited Hill’s bedroom.  Moments
later, the two men came back into Hill’s bedroom.  This time, as soon as he entered the room,
the smaller black male pulled out a gun and pointed it at Hill’s face.  At the same time, the larger black male opened
the top drawer of Hill’s dresser and asked him where the money was.  Hill responded that there was no money, and
the two men left his bedroom.  Hill later
discovered several items missing from his home including his wallet, cup of
change, car keys, computer, cell phone, stereo, and Jeep Grand Cherokee.

            The following day Appellant was
pulled over for a traffic violation while driving Hill’s Jeep.  Officer Nathan Lehman testified that after he
initiated a traffic stop, Appellant pulled into a McDonald’s parking lot,
exited the vehicle, and ran.  Officer
Lehman caught up with Appellant and took him into custody.  

            Detective Edward Raynsford
interviewed Appellant on September 20, 2009. 
According to Detective Raynsford, Appellant did not take the interview
seriously, wore a “smile or a smirk on his face” throughout the interview and
at several points during the interview, Appellant laughed or giggled.  Appellant did not admit to burglarizing Hill’s
home during the interview, but he matched Hill’s description of the larger male
who entered his home on the night in question.  Following the interview, Detective Raynsford released
Appellant to other officers who booked him into jail.  

            Detective Raynsford and a few other
officers then went to Appellant’s home in an attempt to locate more evidence.  Appellant’s mother answered the door and
signed a consent form allowing Detective Raynsford to search the home.  Appellant’s mother then showed the officer’s
to Appellant’s room.  Inside, Detective
Raynsford found a gun matching the description Hill gave as the gun used in the
burglary.  The officers also found
several other items belonging to Hill including his driver’s license and credit
card.  

The “Enhancement
Offense” - Aggravated Sexual Assault

            The State also sought to enhance Appellant’s punishment
through a prior felony conviction for aggravated sexual assault with a deadly
weapon (the “enhancement offense”).  The
enhancement offense included as a paragraph in the indictment which stated: 

REPEAT OFFENDER NOTICE:  AND IT IS FURTHER PRESENTED TO SAID COURT
THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES SET OUT ABOVE, THE
DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF AGGRAVATED SEXUAL
ASSAULT - DEADLY WEAPON, IN THE DISTRICT COURT OF TOM GREEN COUNTY, TEXAS, IN
CAUSE NUMBER D-03-0358-J, ON THE 3RD DAY OF JUNE, 2004.

 

Appellant
pled true to the enhancement offense as alleged in the notice.

            At the trial, the State introduced evidence
regarding the enhancement offense through the Appellant’s Texas Youth
Commission records and judgments;  the
testimony of Detective David Newsom, including his identification of several
photographs taken from the crime scene of the prior offense; the testimony of
BE, the victim in the prior offense; and (4) the testimony of ME, BE’s
mother.  

            Detective David Newsom was the San
Angelo police officer assigned to the prior sexual assault case.  He testified that on October 8, 2003, he
responded to a call regarding a sexual assault of child committed by Appellant,
who was also a juvenile at the time. [2]  During Detective Newsom’s testimony, the
State sought to introduce exhibits 87-94. 
These exhibits were photographs taken at the scene of the crime back in
2003.  At the bench, Appellant objected, “to
the exhibits and also the testimony as it’s going behind the facts of the case
that is being used as the enhancement paragraph on all of these cases.”  The judge overruled Appellant’s objection and
the photographs were admitted into evidence. 
Detective Newsom went on to testify regarding the photographs.  Appellant did not renew his initial objection
or make any additional objections throughout the remainder of Detective Newsom’s
testimony.  

            BE, the victim of the prior sexual
assault, also testified regarding the enhancement offense.  According to BE, on October 8, 2003, she and
Appellant rode the same bus home from school.[3]  She got off the bus with the normal kids from
her stop, and she started walking home. 
As she walked home, Appellant started talking to her.  He told her it was his mother’s birthday and
he had hidden his mother’s present underneath a board in an abandoned house
just down the street, but the board was heavy, and he needed help to lift it.  BE agreed to follow Appellant to the
abandoned house and help him get the present. 


            Once inside the house, Appellant
tackled BE from behind.[4]  Initially, BE was able to wiggle free.  Appellant laughed and told her he was only
joking around.  BE realized she needed to
get out of the situation and told Appellant she had to leave.  At that point, Appellant pulled a pair of
scissors from his pocket and held them to BE’s throat.  He forced her to take off her clothes, shoved
her face first on to the mattress, and anally raped her.  Afterward, Appellant gripped either side of
BE’s neck and began twisting it as hard as he could.  According to BE, she was kicking and
scratching Appellant the whole time he tried to break her neck.  Eventually, Appellant stopped strangling her,
but instead of giving up, he pulled the scissors back out and started trying to
stab her in the throat.  BE fought as
hard as she could but Appellant managed to cut her throat a few times with the
scissors.  Finally, Appellant became tired
and gave up.  He told BE that he would
kill her if she ever said anything, picked up his backpack, and left.  

            After the incident BE ran home.  Her stepfather was at the house and she
immediately told him she had been raped and they needed to call the police.  Her stepfather reported the incident and also
called BE’s mother, ME, who was on her way home from work.  Once BE’s mother got home, she took BE to the
hospital where she had a full rape exam. 
Also, while at the hospital, several photographs of BE’s injuries were
taken.  

            ME, BE’s mother, was the final
witness to testify for the State regarding the prior sexual assault--the
enhancement offense.  ME essentially
testified to the same facts as her daughter regarding her daughter’s outcry and
their visit to the hospital.  In
addition, the State sought to introduce several of the photographs taken at the
hospital.  The photographs depicted BE’s
injuries including a “scratch or cut” on BE’s forehead and a “slice mark,”
several bruises and red marks on BE’s neck. 
Appellant stated “no objection” when the photographs were offered by the
State and admitted into evidence.  Likewise,
Appellant did not object during ME’s testimony identifying and describing the
images in the photographs.  

Verdict,
Sentencing, and Appeal

            In accordance with Appellant’s
pleas, the jury entered a finding of guilty as to the charged offense and found
the prior conviction, as alleged in the enhancement paragraph, true.  The jury then sentenced Appellant to fifty
years’ imprisonment in the Texas Department of Criminal Justice.  The trial court entered judgment in
accordance with the jury’s verdict and ordered Appellant to serve the sentence
concurrently with the sentences in the two companion cases.   

            On December 8, 2010, Appellant filed
the instant appeal.  In a single issue,
Appellant argues:

The trial court
erred in overruling Appellant’s objection allowing the State to prove the
underlying facts of the prior conviction used to enhance Appellant’s
punishment.  Such admission operated to
deprive Appellant of Due Process of Law under the Fifth and Fourteenth
Amendment[s] to the United States Constitution and [Article] 1, [Sections] 13 and
19 of the Texas Constitution. 

 

For the
reasons that follow, we affirm the trial court’s judgment. 

THE ENHANCEMENT OFFENSE

            On appeal, Appellant complains of
the admission of evidence relating to his prior conviction for aggravated
sexual assault.  Essentially, Appellant
complains on appeal that he was “being retried for the commission of the
juvenile offense for which he had previously been convicted.”  Appellant’s complaints can be divided into
four categories.  First, Appellant challenges
BE’s testimony:  (1) “as to the facts of
her being anally raped by the Appellant when she was thirteen years old”; (2)
to the fact that she did not consent to the sexual activity; and (3) that Appellant
“used a pair of scissors at her throat during the commission of the offense.”  Second, Appellant takes issue that BE’s
mother’s testimony “allowed the State to, in effect,
introduce victim impact evidence for a crime for which the Appellant had
previously been prosecuted.”  Third,
Appellant complains that Detective David Newsom was allowed to identify State’s
Exhibits 87, 88, 89, 90, 91, 92, 93, and 94 “as being photographs taken in
connection with his investigation of the prior conviction.”  The fourth and final complaint is that the
prosecutor “spent the bulk of her final argument discussing, not the
cases for which Appellant was being tried, but rather the case for which he had
previously been convicted, served time in the Texas Youth Commission, and used
as enhancement in the cases at bar.”  

            In response, the State initially
argues that Appellant waived error by failing to properly object at trial.  In the alternative, the State argues that the
trial court did not err in admitting the evidence because it was admissible
under Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure
and admission of the evidence did not violate the federal or state
constitutions.  Finally, the State argues
that even if we find that the complaint was preserved for appeal, and even if we
find evidentiary error, it was harmless because it did not affect a substantial
right.  As a threshold matter, we first address
the State’s contention that Appellant failed to properly preserve his complaints
for our review.   

Preservation
of Error

            To preserve an issue for appellate
review, the trial record must reflect that appellant made a timely objection
stating the specific legal basis and obtained a ruling on that objection.  Tex.R.App.P.
33.1(a)(1)(A); Tex.R.Evid.
103(a)(1); Layton v. State, 280
S.W.3d 235, 238–39 (Tex.Crim.App. 2009). 
Subject to two exceptions, a party must continue to object each time
inadmissible evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193
(Tex.Crim.App. 2003). The two exceptions require counsel to either (1) obtain a
running objection, or (2) request a hearing outside the presence of the
jury.  Id.  

            In
addition, a point of error on appeal must present the same legal theory as was
presented to the trial court through a timely, specific objection.  See
Sterling v. State, 800 S.W.2d 513, 520-21 (Tex.Crim.App.1990), cert. denied, 501 U.S. 1213, 111 S.Ct.
2816, 115 L.Ed.2d 988 (1991); Coffey v.
State, 796 S.W.2d 175, 179-80 (Tex.Crim.App. 1990); Maldonado v. State, 902 S.W.2d 708, 711 (Tex.App.--El Paso 1995, no
pet.).  “An appellant who fails to
preserve this parity in legal theories presents nothing on which an appellate
court may act.”  Davila v. State, 930
S.W.2d 641, 650 (Tex.App.--El Paso, 1996 ), citing
Sterling, 800 S.W.2d at 521.  “This
rule logically follows from the general rule that a party must timely present a
specific objection of any error to the trial court.”  Id.

Application
of Law to Facts

            Appellant does not specifically
address preservation of error.  However,
Appellant’s “Issue Presented” states that: 
“The trial court erred in overruling Appellant’s objection allowing
the State to prove the underlying facts of the prior conviction used to enhance
Appellant’s punishment.”  [Emphasis
added].

            Appellant’s referenced objection was
made shortly after Detective Newsom took the stand.  During Detective Newsom’s testimony, the
State sought to introduce several photographs marked as State’s Exhibits 87-94
into evidence.  Counsel for Appellant
objected as follows:  

Q. 
[BY THE STATE:]  Let me show you
what’s been previously marked as State’s Exhibit 87, State’s Exhibit 88, State’s
Exhibit 89, State’s 90, 91, 92, 93, and 94. Do State’s Exhibits 87 through 94
fairly and accurately depict the scene and the items found at the scene with
regard to the case involving Joseph Suiters for which you were assigned in
October of 2003?

A. 
Yes, they are.

[THE STATE]:  Judge, at this time, we offer State’s 87
through 94 and tender to Defense counsel for inspection.

[DEFENSE COUNSEL]: We would like to go to
the bench, if we could, about that.

THE COURT: 
Yes.

(At the bench, on the record.)

[DEFENSE COUNSEL]:  Judge, I’d like to object to the exhibits and
also the testimony as it’s going behind the facts of the case that is being
used as the enhancement paragraph on all of these cases.

THE COURT: 
Okay.  That objection is
overruled.

[DEFENSE COUNSEL]:  Thank you.

(End of bench conference.)

THE COURT: 
State’s Exhibits 87 through 94 are admitted.

Appellant did
not renew his objection at any time during Detective Newsom’s testimony, nor
did Appellant make a new objection, or seek to renew the objection, during the
testimony of BE, ME, or the State’s closing argument.  Therefore, it appears Appellant is under the
false impression that the aforementioned objection sufficiently preserved error
as to all of his complaints on appeal. 
Appellant cites no legal authority supporting such a broad application
of a single objection, nor have we found any. 
Accordingly we review the record to see whether Appellant made a
sufficient objection elsewhere.  

            Appellant’s exact argument regarding
BE’s testimony is unclear, but it appears he is arguing that BE’s testimony
constituted impermissible victim impact evidence.  At trial, Appellant objected only to hearsay.  Since no request, objection, or motion was
made before the trial court which relates to Appellant’s complaints on appeal,
there is nothing preserved for our review with respect to these
complaints.  See Lucio v. State, 351 S.W.3d 878, 906-07 (Tex.Crim.App.
2011).  

            Similarly, with respect to ME’s
testimony, Appellant contends on appeal that her testimony constituted
impermissible victim impact testimony.  Defense
counsel lodged only a single hearsay objection during ME’s testimony which he
immediately withdrew.  He also referenced
ME’s testimony about the photographs of BE’s injuries.  Here is the colloquy:

Q. [BY THE
STATE]:  [ME], I’m showing you what’s
been marked as State’s Exhibit 95, State’s Exhibit No. 96, State’s Exhibit No.
97, State’s Exhibit No. 98, State’s Exhibit No. 99, State’s Exhibit 100, and
State’s Exhibit 101, okay?  . . .  Do each of these pictures fairly and
accurately depict your daughter and the injuries that were sustained at the
hands of Mr. Suiters? 

 

A. [BY ME]:  Yes. 

 

[THE
STATE]:  Your honor, at this time, the
State will offer State’s Exhibits No. 95 through 101. 

 

[DEFENSE
COUNSEL]:  They’ve been previously
examined.  No objection. 

 

THE COURT:  State’s Exhibits 95 through 101 are admitted.

 

Not only did
Appellant fail to make a specific, timely request or objection during ME’s
testimony, counsel affirmatively stated that he had no objection.  Accordingly, Appellant presents nothing for
review with respect to ME’s testimony or State’s Exhibits 95-101.

            Next we address Appellant’s
complaints with respect to the State’s closing argument.  These complaints are equally unpreserved
because Appellant did not object. 
While his counsel objected three times during closing argument, none
related to deprivation of due process, the amount of time spent or focused on
the enhancement offense, or any other conceivably related topic.  Because the trial objections do not
comport with the complaints on appeal, error has been waived.  

            The final question is whether
Appellant sufficiently preserved error with respect to his complaints regarding
State’s exhibits 87-94 and Detective Newsom’s testimony.              His brief does not contain a single statement
comporting with his trial objection. 
Instead, the only assertions on appeal are (1) certain evidence was
inadmissible as a victim impact statement; (2) this evidence served to retry
Appellant for an offense he had previously been convicted of; and (3) the
introduction of this evidence sought to deprive Appellant of his right to a
fair trial by an impartial jury in violation of his constitutional rights.  

            With exceptions that do not apply
here, to preserve error, a party must continue to object each time the
objectionable evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193
(Tex.Crim.App. 2003), citing Ethington v.
State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).  A trial court’s erroneous admission of
evidence will not require reversal when other such evidence was received
without objection, either before or after the complained-of ruling.  Leday v.
State, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998).

            State’s Exhibits 87-94 were
identified by Detective Newsom at trial. 
State’s Exhibits 87 and 88 were identified the photographs as a picture
of the street sign on the corner next to the abandoned house where the incident
took place and a picture of the outside of the abandoned home,
respectively.  Detective Newsom testified
that State’s Exhibit 89 was a photograph of “some of the junk that was in the
room where the incident occurred,” and State’s Exhibit 90 was a photograph of
what appeared to be a baby crib mattress on the floor of the same room.  State’s Exhibits 91 and 92 showed “the wet
spot . . . and the lollipop and part of the mattress.”[5]  According to Detective Newsom, BE dropped the
lollipop during the incident and urinated on the floor.  Finally, State’s Exhibits 93 and 94 were
photographs of the scissors used in the assault.  

            At trial BE testified, without
objection that:  (1) she lived on Luna
Street in San Angelo, Texas; (2) there was an abandoned house down the street;
(3) on October 8, 2003, she went with Appellant to the abandoned house; (4)
once inside the house they went into a room with a small mattress; (5) while in
that room Appellant shoved her onto the mattress and anally raped her; (6) when
Appellant shoved her, she dropped a lollipop she was previously holding; (7)
during or after the offense, she urinated on the floor of that room; (8)
Appellant held a pair of scissors to her throat while he raped her; and (9)
after the rape, Appellant used the scissors to try and stab BE in the throat
and eventually discarded the scissors in the abandoned home. 

            A party desiring to complain about
particular evidence must object each time that evidence is offered, or the
objection is waived.  See Perry v. State, 957 S.W.2d 894
(Tex.App.--Texarkana 1997, pet. ref’d). 
Although Appellant objected to the introduction of State’s exhibits
87-94 and Detective Newsom’s testimony regarding those exhibits as going behind
the facts of the enhancement offense, he did not object when BE testified to
essentially the same facts.  See id. (“Although Perry objected to the
admission of the calculation summary report when it was offered by the State,
he did not object when the witness testified about the contents of the report.
Thus, he did not preserve error.”).

            We overrule Appellant’s issue for
review and affirm the trial court’s judgment. 


 

September 26, 2012                            _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)

 











[1]  This is one of three companion cases.  The cases were based on three different
indictments for separate offenses on separate occasions.  In Suiters
v. State, No. 08-11-00048-CR, Appellant was charged with burglary of a habitation
with the intent to commit theft of Heather Brown on or about June 23,
2009.  In Suiters v. State, 08-11-00050-CR, Appellant was charged with
aggravated robbery with a deadly weapon of Perla Esquivel.  Appellant pled guilty in all three cases and,
pursuant to a plea agreement with the State, all three cases proceeded to a
single, consolidated punishment trial. 
The jury rendered a separate verdict and assessed a separate punishment
in each case.  





[2]  Detective Newsom testified that in October
2003, he was working in the Criminal Investigation Division of the San Angelo
Police Department where he was assigned to the Crimes Against Children
cases.  According to his testimony, the
police received a call regarding the offense and a patrol unit was dispatched
to the victim’s house where the officer took a report.  In conjunction with police policy, a
unidentified detective was then contacted. 
After realizing a child was involved, the detective contacted Detective
Newsom.  Detective Newsom testified that
he went directly to the alleged scene of the crime.  





[3]  At the time of the offense, BE was thirteen
years old and in the eighth grade. 
Appellant was in seventh grade. 
She testified that although she and Appellant rode the bus together, and
she knew Appellant’s name and where he lived, she did not know him
personally.   





[4]  BE testified that at the time of the
incident, she was about 5’2” and 81-82 pounds, and Appellant was a couple
inches taller and “considerably heavier.”





[5]  Detective Newsom identified State’s Exhibit
92 as a close up of State’s Exhibit 91.