COURT OF
APPEALS

                                                   EIGHTH DISTRICT OF
TEXAS

                                                              EL
PASO, TEXAS

 


 
 
  
  
 JOSEPH MAURICE SUITERS, JR.,
  
                                    
 Appellant,
  
 v.
  
 THE STATE OF TEXAS,
  
                                     Appellee.
 
  
 
 
  
 '
    
 '
    
 '
    
 '
    
 '
  
 '
 
 
  
  
                   No. 08-11-00048-CR
  
                          Appeal from
  
 Criminal District
 Court No. 3
  
 of Tarrant County,
 Texas
  
 (TC # 1203188D)
 
 
 
 
  
 
 
  
 
 
  
 
 


                                                                  O
P I N I O N

 

            Joseph Maurice Suiters, Jr. was
charged by indictment with burglary of a habitation with the intent to commit
theft against Heather Brown.  The State
sought to enhance Appellant’s punishment as a repeat offender based on a prior
conviction for aggravated assault with a deadly weapon.  Appellant pled guilty to the charged offense and
true to the enhancement offense and the case proceeded to a jury trial on
punishment.[1]  The jury found Appellant guilty of the crime
as charged, found the repeat offender notice true and sentenced Appellant to
forty-five years in the Texas Department of Criminal Justice.  We affirm.

BACKGROUND

The Charged
Offense - Burglary of a Habitation

            On June 15, 2010, Appellant was
charged by indictment with burglary of a habitation, a second degree felony.  With respect to the charged offense, the record
indicates that on June 23, 2009, Heather Brown and her two children were asleep
in their Fort Worth home.  Brown awoke
after hearing a loud noise, walked down the hall and saw two men in her living
room.   Brown ran back into her bedroom
and yelled at her children to wake up.  They
escaped through a bathroom window.  Once
out of the house, they went door to door until one of their neighbors answered and
agreed to call the police.  

            Sometime after calling the police, Brown
left her children at her neighbor’s house and returned home to meet the
police.  The front door of her home “had
been kicked -- well, the front door was open, and the lock area had been
shattered.”  Her television, camcorder,
and computer were all missing.  

            The police discovered a white rag at
the scene, purportedly left behind during the robbery.  The cloth was submitted for DNA testing.  At the punishment hearing, the parties
stipulated that the DNA on the cloth matched that of Appellant.  

The “Enhancement
Offense” - Aggravated Sexual Assault 

            The State also alleged a prior felony conviction for
aggravated sexual assault with a deadly weapon. 
Rather than alleging the offense through an enhancement paragraph in the
indictment, the State sent a “Brooks Notice”
on July 20, 2010.  See Brooks v. State, 957 S.W.2d 30 (Tex.Crim.App. 1997).  

Please accept this
letter as legal notice of the State’s intent to seek enhanced punishment under
Chapter 12 of the Texas Penal Code in the trial of the above styled and
numbered cause.  The state will seek to
introduce your client’s prior felony conviction in order to: 

 

            1)  Show that the Defendant IS NOT eligible for probation; and, 

 

            2)  Enhance the range of possible punishment to 5
years to 99 or life.

 

REPEAT OFFENDER
NOTICE:  AND IT IS FURTHER PRESENTED TO
SAID COURT THAT PRIOR TO THE COMMISSION OF THE OFFENSE OR OFFENSES SET OUT
ABOVE, THE DEFENDANT WAS FINALLY CONVICTED OF THE FELONY OFFENSE OF AGGRAVATED
SEXUAL ASSAULT -- DEADLY WEAPON, IN THE DISTRICT COURT OF TOM GREEN COUNTY, IN
CAUSE NUMBER D-03-0358-J, ON THE 3RD DAY OF JUNE, 2004 

 

This notice is in
accord with Brooks v. State, 957 S.W.2d 30 (Tex.Crim.App. 1997).

 

Appellant
pled true to the enhancement offense as alleged in the notice.

            At the trial, the State introduced
evidence regarding the enhancement offense through the Appellant’s Texas Youth
Commission records and judgments; the testimony of Detective David Newsom,
including his identification of several photographs taken from the crime scene
of the prior offense; (3) the testimony of BE, the victim in the prior offense;
and (4) the testimony of ME, BE’s mother.  

            Detective David Newsom was the San
Angelo police officer assigned to the prior sexual assault case.  He testified that on October 8, 2003, he
responded to a call regarding a sexual assault of child committed by Appellant,
who was also a juvenile at the time. [2]  During Detective Newsom’s testimony, the
State sought to introduce exhibits 87-94. 
These exhibits were photographs taken at the scene of the crime back in
2003.  At the bench, Appellant objected, “to
the exhibits and also the testimony as it’s going behind the facts of the case
that is being used as the enhancement paragraph on all of these cases.”  The judge overruled the objection and the photographs
were admitted into evidence.  Detective
Newsom went on to testify regarding the photographs.  Appellant did not renew his initial objection
or make any additional objections throughout the remainder of Detective Newsom’s
testimony.  

            BE, the victim of the prior sexual
assault, also testified regarding the enhancement offense.  According to BE, on October 8, 2003, she and
Appellant rode the same bus home from school.[3]  She got off the bus with the normal kids from
her stop, and she started walking home.  As
she walked home, Appellant started talking to her.  He told her it was his mother’s birthday and
he had hidden his mother’s present underneath a board in an abandoned house
just down the street, but the board was heavy, and he needed help to lift
it.  BE agreed to follow Appellant to the
abandoned house and help him get the present. 


            Once inside the house, Appellant tackled
BE from behind.[4]  Initially, BE was able to wiggle free.  Appellant laughed and told her he was only
joking around.  BE realized she needed to
get out of the situation and told Appellant she had to leave.  At that point, Appellant pulled a pair of
scissors from his pocket and held them to BE’s throat.  He forced her to take off her clothes, shoved
her face first on to the mattress, and anally raped her.  Afterward, Appellant gripped either side of
BE’s neck and began twisting it as hard as he could.  According to BE, she was kicking and
scratching Appellant the whole time he tried to break her neck.  Eventually, Appellant stopped strangling her,
but instead of giving up, he pulled the scissors back out and started trying to
stab her in the throat.  BE fought as
hard as she could but Appellant managed to cut her throat a few times with the
scissors.  Finally, Appellant became
tired and gave up.  He told BE that he
would kill her if she ever said anything, picked up his backpack, and
left.  

            After the incident, BE ran
home.  Her stepfather was at the house
and she immediately told him she had been raped and they needed to call the
police.  Her stepfather reported the
incident and also called BE’s mother, ME, who was on her way home from
work.  Once BE’s mother got home, she
took BE to the hospital where she had a full rape exam.  Also, while at the hospital, several
photographs of BE’s injuries were taken. 


            ME, BE’s mother, was the final
witness to testify for the State regarding the prior sexual assault--the
enhancement offense.  ME essentially
testified to the same facts as her daughter regarding her daughter’s outcry and
their visit to the hospital.  In
addition, the State sought to introduce several of the photographs taken at the
hospital.  The photographs depicted BE’s
injuries including a “scratch or cut” on BE’s forehead and a “slice mark,”
several bruises and red marks on BE’s neck.  Appellant stated “no objection” when the
photographs were offered by the State and admitted into evidence.  Likewise, Appellant did not object during ME’s
testimony identifying and describing the images in the photographs. 

Verdict,
Sentencing, and Appeal

            In accordance with Appellant’s
pleas, the jury entered a finding of guilty as to the charged offense and found
the prior conviction, as alleged in the enhancement paragraph, true.  The jury then sentenced Appellant to
forty-five years’ imprisonment in the Texas Department of Criminal
Justice.  The trial court entered
judgment in accordance with the jury’s verdict and ordered Appellant to serve
the sentence concurrently with the sentences in the two companion cases.

            On December 8, 2010, Appellant filed
the instant appeal.  In a single issue,
Appellant argues:

The trial court
erred in overruling Appellant’s objection allowing the State to prove the underlying
facts of the prior conviction used to enhance Appellant’s punishment.  Such admission operated to deprive Appellant
of Due Process of Law under the Fifth and Fourteenth Amendment[s] to the United
States Constitution and [Article] 1, [Sections] 13 and 19 of the Texas
Constitution. 

 

For the
reasons that follow, we affirm the trial court’s judgment. 

THE ENHANCEMENT OFFENSE

            On appeal, Appellant complains of
the admission of evidence relating to his prior conviction for aggravated
sexual assault.  Essentially, he contends
that he was “being retried for the commission of the juvenile offense for which
he had previously been convicted.”  Appellant’s
complaints can be divided into four categories. 
First, Appellant challenges BE’s testimony:  (1) “as to the facts of her being anally raped
by the Appellant when she was thirteen years old”; (2) to the fact that she did
not consent to the sexual activity; and (3) that Appellant “used a pair of
scissors at her throat during the commission of the offense.”  Second, Appellant takes issue that BE’s
mother’s testimony “allowed the State to, in effect,
introduce victim impact evidence for a crime for which the Appellant had
previously been prosecuted.”  Third,
Appellant complains that Detective David Newsom was allowed to identify State’s
Exhibits 87, 88, 89, 90, 91, 92, 93, and 94 “as being photographs taken in
connection with his investigation of the prior conviction.”  The fourth and final complaint is that the
prosecutor “spent the bulk of her final argument discussing, not the
cases for which Appellant was being tried, but rather the case for which he had
previously been convicted, served time in the Texas Youth Commission, and used
as enhancement in the cases at bar.”

            In response, the State initially argues
that Appellant waived error by failing to properly object at trial.  In the alternative, the State argues that the
trial court did not err in admitting the evidence because it was admissible
under Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure;
and admission did not violate the federal or state constitutions.  Finally, the State argues that even if we
find that the complaint was preserved for appeal, and even if we find
evidentiary error, it was harmless because it did not affect a substantial
right.  As a threshold matter, we first address
the State’s contention that Appellant failed to properly preserve his complaints
for our review.  

Preservation
of Error

            To preserve an issue for appellate
review, the trial record must reflect that appellant made a timely objection
stating the specific legal basis and obtained a ruling on that objection.  Tex.R.App.P.
33.1(a)(1)(A); Tex.R.Evid.
103(a)(1); Layton v. State, 280
S.W.3d 235, 238-39 (Tex.Crim.App. 2009). 
Subject to two exceptions, a party must continue to object each time
inadmissible evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193
(Tex.Crim.App. 2003). The two exceptions require counsel to either (1) obtain a
running objection, or (2) request a hearing outside the presence of the
jury.  Id.  

            In
addition, a point of error on appeal must present the same legal theory as was
presented to the trial court through a timely, specific objection.  See
Sterling v. State, 800 S.W.2d 513, 520-21 (Tex.Crim.App. 1990), cert. denied, 501 U.S. 1213, 111 S.Ct.
2816, 115 L.Ed.2d 988 (1991); Coffey v.
State, 796 S.W.2d 175, 179-80 (Tex.Crim.App. 1990); Maldonado v. State, 902 S.W.2d 708, 711 (Tex.App.--El Paso 1995, no
pet.).  “An appellant who fails to
preserve this parity in legal theories presents nothing on which an appellate
court may act.”  Davila v. State, 930 S.W.2d 641, 650 (Tex.App.--El Paso 1996, pet.
ref’d), citing Sterling, 800 S.W.2d
at 521.  “This rule logically follows
from the general rule that a party must timely present a specific objection of
any error to the trial court.”  Id.

Application
of Law to Facts

            Appellant does not specifically
address preservation of error.  However,
Appellant’s “Issue Presented” states that:  “The trial court erred in overruling Appellant’s objection
allowing the State to prove the underlying facts of the prior conviction used
to enhance Appellant’s punishment.” 
[Emphasis added].

            Appellant’s referenced objection was
made shortly after Detective Newsom took the stand.  During Detective Newsom’s testimony, the
State sought to introduce several photographs marked as State’s Exhibits 87-94
into evidence.  Counsel for Appellant
objected as follows:  

Q. 
[BY THE STATE:]  Let me show you
what’s been previously marked as State’s Exhibit 87, State’s Exhibit 88, State’s
Exhibit 89, State’s 90, 91, 92, 93, and 94. Do State’s Exhibits 87 through 94
fairly and accurately depict the scene and the items found at the scene with
regard to the case involving Joseph Suiters for which you were assigned in
October of 2003?

A. 
Yes, they are.

[THE STATE]:  Judge, at this time, we offer State’s 87
through 94 and tender to Defense counsel for inspection.

[DEFENSE COUNSEL]: We would like to go to
the bench, if we could, about that.

THE COURT: 
Yes.

(At the bench, on the record.)

[DEFENSE COUNSEL]:  Judge, I’d like to object to the exhibits and
also the testimony as it’s going behind the facts of the case that is being
used as the enhancement paragraph on all of these cases.

THE COURT: 
Okay.  That objection is
overruled.

[DEFENSE COUNSEL]:  Thank you.

(End of bench conference.)

THE COURT: 
State’s Exhibits 87 through 94 are admitted.

Appellant did
not renew his objection at any time during Detective Newsom’s testimony, nor
did Appellant make a new objection, or seek to renew the objection, during the
testimony of BE, ME, or the State’s closing argument.  Appellant cites no legal authority supporting
such a broad application of a single objection, nor have we found any.  Accordingly we review the record to see
whether Appellant made a sufficient objection elsewhere.  

            Appellant’s exact argument regarding
BE’s testimony is unclear, but it appears he is arguing that her testimony
constituted impermissible victim impact evidence.  At trial, Appellant objected only to hearsay.
 Since no request, objection, or motion
was made before the trial court which relates to Appellant’s complaints on
appeal, there is nothing preserved for our review with respect to these
complaints.  See Lucio v. State, 351 S.W.3d 878, 906-07 (Tex.Crim.App. 2011).  

            Similarly, with respect to ME’s
testimony, Appellant contends that her testimony constituted impermissible
victim impact testimony.  Defense counsel
lodged only a single hearsay objection during ME’s testimony which he
immediately withdrew.  He also referenced
ME’s testimony about the photographs of BE’s injuries.  Here is the colloquy:

Q. [BY THE
STATE]:  [ME], I’m showing you what’s
been marked as State’s Exhibit 95, State’s Exhibit No. 96, State’s Exhibit No.
97, State’s Exhibit No. 98, State’s Exhibit No. 99, State’s Exhibit 100, and
State’s Exhibit 101, okay?  . . .  Do each of these pictures fairly and
accurately depict your daughter and the injuries that were sustained at the
hands of Mr. Suiters? 

 

A. [BY ME]:  Yes. 

 

[THE STATE]:  Your honor, at this time, the State will offer
State’s Exhibits No. 95 through 101. 

 

[DEFENSE
COUNSEL]:  They’ve been previously
examined.  No objection. 

 

THE COURT:  State’s Exhibits 95 through 101 are admitted.

 

Not only did
Appellant fail to make a specific, timely request or objection during ME’s
testimony, counsel affirmatively stated that he had no objection.  Accordingly, Appellant presents nothing for
review with respect to ME’s testimony or State’s Exhibits 95-101.

            Next we address Appellant’s
complaints with respect to the State’s closing argument.  These complaints are equally unpreserved
because Appellant did not object. 
While his counsel objected three times during closing argument, none
related to deprivation of due process, the amount of time spent or focused on
the enhancement offense, or any other conceivably related topic.  Because the trial objections do not
comport with the complaints on appeal, error has been waived.  

            The final question is whether
Appellant sufficiently preserved error with respect to his complaints regarding
State’s exhibits 87-94 and Detective Newsom’s testimony.              His brief does not contain a single statement
comporting with his trial objection.  Instead,
the only assertions on appeal are (1) certain evidence was inadmissible as a victim
impact statement; (2) this evidence served to retry Appellant for an offense he
had previously been convicted of; and (3) the introduction of this evidence
sought to deprive Appellant of his right to a fair trial by an impartial jury
in violation of his constitutional rights. 


            With exceptions that do not apply
here, to preserve error, a party must continue to object each time the
objectionable evidence is offered.  Martinez v. State, 98 S.W.3d 189, 193
(Tex.Crim.App. 2003), citing Ethington v.
State, 819 S.W.2d 854, 858 (Tex.Crim.App. 1991).  A trial court’s erroneous admission of
evidence will not require reversal when other such evidence was received
without objection, either before or after the complained-of ruling.  Leday v.
State, 983 S.W.2d 713, 718 (Tex.Crim.App. 1998).

            State’s Exhibits 87-94 were
identified by Detective Newsom at trial. 
State’s Exhibits 87 and 88 were identified the photographs as a picture
of the street sign on the corner next to the abandoned house where the incident
took place and a picture of the outside of the abandoned home,
respectively.  Detective Newsom testified
that State’s Exhibit 89 was a photograph of “some of the junk that was in the
room where the incident occurred,” and State’s Exhibit 90 was a photograph of
what appeared to be a baby crib mattress on the floor of the same room.  State’s Exhibits 91 and 92 showed “the wet
spot . . . and the lollipop and part of the mattress.”[5]  According to Detective Newsom, BE dropped the
lollipop during the incident and urinated on the floor.  Finally, State’s Exhibits 93 and 94 were
photographs of the scissors used in the assault.  

            At trial BE testified, without
objection that:  (1) she lived on Luna
Street in San Angelo, Texas; (2) there was an abandoned house down the street;
(3) on October 8, 2003, she went with Appellant to the abandoned house; (4)
once inside the house they went into a room with a small mattress; (5) while in
that room Appellant shoved her onto the mattress and anally raped her; (6) when
Appellant shoved her, she dropped a lollipop she was previously holding; (7) during
or after the offense, she urinated on the floor of that room; (8) Appellant
held a pair of scissors to her throat while he raped her; and (9) after the
rape, Appellant used the scissors to try and stab BE in the throat and
eventually discarded the scissors in the abandoned home. 

            A party desiring to complain about
particular evidence must object each time that evidence is offered, or the
objection is waived.  See Perry v. State, 957 S.W.2d 894
(Tex.App.--Texarkana 1997, pet. ref’d). 
Although Appellant objected to the introduction of State’s exhibits
87-94 and Detective Newsom’s testimony regarding those exhibits as going behind
the facts of the enhancement offense, he did not object when BE testified to
essentially the same facts.  See id. (“Although Perry objected to the
admission of the calculation summary report when it was offered by the State,
he did not object when the witness testified about the contents of the report.
Thus, he did not preserve error.”). 

            We overrule Appellant’s issue for
review and affirm the judgment of the trial court below.

 

September 26, 2012                            _______________________________________________

ANN CRAWFORD
McCLURE, Chief Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1]  This is one of three companion cases.  The cases were based on three different
indictments for separate offenses on separate occasions.  In Suiters
v. State, No. 08-11-00049-CR, Appellant was charged with burglary of a
 habitation with the intent to commit theft against Lance Hill on or about
September 18, 2009.  In Suiters v. State, 08-11-00050-CR,
Appellant was charged with aggravated robbery with a deadly weapon of Perla
Esquivel.  Appellant pled guilty in all three
cases and pursuant to a plea agreement with the State, all three cases
proceeded to a single, consolidated punishment trial.  The jury rendered a separate verdict and
assessed a separate punishment in each case. 
The same prior conviction was used to enhance Appellant’s punishment in
each of the three cases.





[2]  Detective Newsom testified that in October
2003, he was working in the Criminal Investigation Division of the San Angelo
Police Department where he was assigned to the Crimes Against Children cases.  According to his testimony, the police
received a call regarding the offense and a patrol unit was dispatched to the
victim’s house where the officer took a report. 
In conjunction with police policy, an unidentified detective was then
contacted.  After realizing a child was
involved, the detective contacted Detective Newsom.  Detective Newsom testified that he went
directly to the alleged scene of the crime. 






[3]  At the time of the offense, BE was thirteen
years old and in the eighth grade. 
Appellant was in seventh grade. 
Although she and Appellant rode the bus together, and she knew
Appellant’s name and where he lived, she did not know him personally.   





[4]  BE testified that at the time of the incident
she was about 5’2” and 81-82 pounds, and Appellant was a couple inches taller
and “considerably heavier.”





[5]  Detective Newsom identified State’s Exhibit
92 as a close up of State’s Exhibit 91.